UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| | * | |
| William A. Demmons and | * | DIVISION "B" |
| Karen S. Fowler | * | |
| Debtors | * | |
| | * | CASE NO. 14-11638 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| | * | |
| William A. Demmons and | * | |
| Karen S. Fowler | * | |
| | * | |
| Plaintiff/ Debtors | * | ADV PROC. NO. _____ |
| | * | |
| versus | * | |
| | * | |
| R3 Education Inc., dba Saba University | * | |
| School of Medicine; | * | |
| American Educational Services; Maine | * | |
| Educational Services; Navient Solutions, | * | |
| Inc., and Nelnet, Inc | * | |
| | * | |
| Defendants | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEBTORS' COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOANS

William A. Demmons, III and Karen S. Fowler, Debtors herein ("Debtors") file this

Complaint to Determine the Dischargability of Student Loans (the "Student Loans") and

respectfully represent as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Plaintiffs are the Debtors, William A. Demmons III ("Demmons") and Karen S. Fowler

("Fowler")(collectively referred to as "Debtors"), husband and wife, who filed a Petition under

Chapter 7 of the United States Bankruptcy Code on June 25, 2014.

2.

Debtors received a discharge in their Chapter 7 Proceeding on September 30, 2014.

3.

Named as a Defendant in this Adversary Proceeding is R3 Education, Inc., which upon information and belief, is the owner of Saba University School of Medicine ("Saba"), with its home office located in Devens, Massachusetts.

4.

Also named as defendants in this Adversary Proceeding are the owners/holders/servicers of the Debtors' multiple student loans, that being:

(i)     American Educational Services, a Pennsylvania corporation authorized to do business in Louisiana;

(ii)    Maine Educational Services, a Maine corporation authorized to do business in Louisiana;

(iii)   Navient Solutions, Inc., a Pennsylvania corporation authorized to do business in Louisiana; and

(iv)    Nelnet, Inc., a Nebraska corporation authorized to do business in Louisiana.

The owners/holders and/or servicers of the Student Loans are collectively referred to as the "Defendants" and/or "Student  Loan Creditors".

5.

Defendants were named as creditors in the Debtors' Chapter 7 bankruptcy proceeding.

6.

This Court has jurisdiction over this matter under 28 U.S.C. Sections 1334 and 157.

7.

This is a core proceeding under 28 U.S.C. Section 157 (a)(2).

8.

Venue in this Court is appropriate under 28 U. S.C. Section 1409.

**FACTUAL ALLEGATIONS**

9.

Debtors are married. Demmons is a 57 year old man. Fowler is a 48 year old woman.

10.

Demmons and Fowler originally met in January of 2004 while attending medical school at Saba University School of Medicine.

11.

Saba University School of Medicine ("Saba") owned by R3 Education, Inc., is an offshore for-profit Caribbean medical school located in the Caribbean Netherlands Antilles, with the home office in Devens, Massachusetts.

12.

Debtors obtained a number of student loans to finance their attendance at Saba University, all of which loans are private, uninsured/non-subsidized loans.

13.

Demmons obtained the following loans to finance his attendance at college and medical school:

(i) May 13, 2003 – Undergraduate student loan with principle balance of $7,500 consisting of Signature Student Loan, SLM Private Credit and Student Loan Trust currently held by Navient Solutions, Inc.  Outstanding balance as of December 17, 2014 is $10,886.90.

(ii) November 13, 2003 – Undergraduate school loan with principle balance of $37,726.08 consisting of Stafford Loans and Nelnet Super Loans currently held by Nelnet, Inc. Outstanding balance as of December 17, 2014 is $49,820.26.

(iii)  February 2, 2004 – Medical school loan with principal balance of $32,370.00 consisting of loan with MedAchiver and Key Bank, currently held by American Education Services.  Outstanding balance as of default date on June 20, 2014 is $47,599.41.

(iv)  September 21, 2004 – Medical school loan with principal balance of $49,150.00 consisting of loan with MedAchiver and Key Bank, currently held by American Education Services.  Outstanding balance as of default date on June 20, 2014 is $70,530.55.

(v)  September 21, 2004 – Masters/Medical school loan with principal balance of $3,600.00 consisting of loan with MedAchiver and Key Bank, currently held by American Education Services.  Outstanding balance as of default date on June 20, 2014 is $5,183.17.

(vi) December 2006, July 2007, September 2008 and August 2009 –  Medical school loans with principal balance of $55,000.00 consisting of loan with Maine Services and Main Medical Education Foundation, currently held by Maine Educational Services.  Outstanding balance as of October 30, 2014 is $62,791.16.

(vii)  January 19, 2006 – Medical school loan with principal balance of $46,660.00 consisting of student loan with X-Press Health and FCDB  PSL Trust, currently held by American Educational Services.  Outstanding balance as of default date on July 25,2014 is $64,859.58.

(viii) December 14, 2007 – Medical school loan with principal balance of $57,690.00 consisting of student loan with X-Press Health and Deutsche Bank, currently held by American Educational Services.  Outstanding balance as of December 17, 2014 is $72,443.56.

14.

Fowler obtained the following loans to finance her attendance at medical school:

(i)     January 19, 2006 – Medical school loan with principle balance of $31,130.00 consisting of student loan with X-Press Health and Deutsche Bank and currently held by American Educational Services.  Outstanding balance as of date of default on June 25, 2014 is $40,539.95.

(ii)    December 4, 2007 – Medical school loan with principle balance of $13,250.00 consisting of student loan with X-Press Health and Deutsche Bank and currently held by American Educational Services.  Outstanding balance as of date of default on June 24, 2014 is $14,031.35.

15.

Collectively and as listed on Bankruptcy Schedule F, Debtors have seven Student Loans held by/owned by/ and/or serviced by American Education Services totaling approximately $315,187.57;  One Student Loan with Maine Educational Services totaling $62,791.16; One Student Loan with Nelnet Education Loan Funding Inc. totaling $49,820.26; and One Student Loan with Navient Solutions, Inc. totaling $10,886.90.  Therefore, based upon Debtors' most recent information, the ten (10) Student Loans collectively total at least $438,685.89[1].

---

[1] Of this total amount, $54,571.30 are Fowler's individual Student Loans and $385,114.59 are Demmon's individual Student Loans.

16.

Demmons and Fowler completed their basic medical school science requirements at Saba, returning to the United States on August 8, 2006.

## **Fowler Medical Issues**

17.

While Fowler was attempting to pass her Step One Examination she developed an autoimmune hematologic abnormalities, which resulted in substantial female health issues. She was unsuccessful with her attempts to pass her examination due to the medical hardships. Consequently, she was denied access into clinical studies, which prevents her from completing her medical degree.

## **Demmons Medical Issues**

18.

On May 22, 2010, Demmons graduated from Saba University medical school.

19.

On December 14, 2010, Demmons was involved in an automobile accident wherein he sustained a spinal cord injury resulting in partial paralysis secondary to an upper motor neuron lesion.  He experienced a decreased mobility in both upper and lower extremities, with a bilateral loss of sensation, burning and radicular pain in the upper extremities, and bilateral radicular pain to the lower extremities.  An extensive rehabilitation and treatment program consisting of PM&R, ESI, PT and medications were prescribed over a two and a half year period to help decrease pain, increase mobility and restore function.

20.

Currently, Demmons continues to have decreased mobility, a permanent loss of fine motor skills in both of his hands, and an overall neurological weakness with muscular atrophy and severe burning radicular pain in his arms and hands.

21.

Given the debilitating nature of his spinal cord injury, the extended amount of time since his graduation in May of 2010, and Demmons' current age, Demmons has been unsuccessful in his attempts to "match" in order to procure a medical residency.

22.

Demmons has applied to hundreds of programs over the past five years, during which he has been invited to only five interviews – all of which have been unsuccessful.

23.

Without procuring a residency position, Demmons cannot become a licensed physician and practice medicine in any state in the United States as a medical doctor.

**Debtors' Current Employment and Financial Condition**

24.

Demmons is currently employed as an "ED Tech" earning $12.25 per hour.  It is highly unlikely due to his current medical condition, his inability to match in order to complete his residency and due to his age, that Demmons income will change in the foreseeable future.

25.

Following dismissal from medical school, Fowler returned to her previous vocation in the field of Durable Medical Equipment. She's involved in the online shipping of incontinence

supplies and earns $10.33 per hour.  Given her educational background and past work history, it is unlikely that Fowler's income will change in the foreseeable future.

26

Upon information and belief, due to the fact that Debtors Student Loans are private loans as opposed to Federally Insured Student Loans, there is no deferment or forbearance of the Student Loans into which Debtors can currently be considered.

27.

Upon information and belief, because the Student Loans are private loans, associated interest rates are much higher than subsidized student loans and the loans are not subject to income based repayment plans.

**CAUSE OF ACTION ONE – UNDUE HARDSHIP**

28.

Debtors incorporate the allegations contained within paragraph 1 through paragraph 27 above as is fully set forth herein:

29.

Debtors' household income is insufficient to pay their student loan debt now or in the reasonably foreseeable future.

30.

Assuming a 40 hour week, Debtors monthly gross salary from employment totals approximately $3,608.00.  Upon information and belief, in order to keep the student loans

current, Defendants would require monthly payment over 120 months of approximately

$4,920.32.[2]

31.

As maintaining the Student Loan payments exceed the Debtors' monthly gross income,

Debtors are unable to maintain the Student Loans now and for the foreseeable future.

32.

Debtors have at all times acted in good faith with respect to their obligations to the

Defendants.  In fact, prior to the filing of their Bankruptcy Petition, Debtors liquidated their

assets in order to fund payment to the student loan creditors.

33.

Excepting the Debtors' Student Loans from discharge would impose an undue hardship

onto the Debtors.

## CAUSE OF ACTION TWO – ALTERNATIVELY, PRIVATE STUDENT LOANS OBTAINED PRIOR TO OCTOBER, 2005 SHOULD BE DISCHARGED

34.

Debtors incorporate the allegations contained within paragraph 1 through paragraph 33

above as is fully set forth herein:

35.

In October 2005, the United States Bankruptcy Code was revised concerning the

discharge of purely private student loans.

---

[2] Based upon the student loan repayment calculator maintained by the Debt Education and Certification Foundation (DECAF) a debt of $438,685.89 at a simple interest rate of 6.8% paid over 120 months would create a monthly payment of $4,920.32 and would require a minimum annual salary of $738,049.

36.

Private student loans obtained prior to the revisions to the Bankruptcy Code are subject to the pre-BAPCPA dischargability provisions.

37.

Demmons Private Student Loans obtained prior to October 2005 total approximately $134,127.03 (the "Private Loans").

38.

Demmons pre-October 2005 Private Loan were not made, insured or guaranteed by a government unit or made under any program funded in whole or in part by a governmental unit or nonprofit institution, these private loans are not excepted from discharge.

39.

Therefore, the Private Loans totaling $134,127.03 incurred prior to October 2005 are dischargable.

**CAUSE OF ACTION THREE – THE STUDENT LOANS**

**LOANS ARE DISCHARGABLE
AS THEY DO NOT FALL WITHIN DEFINITION OF STUDENT LOANS**

40.

Debtors incorporate the allegations contained within paragraph 1 through paragraph 39 above as is fully set forth herein:

41.

Under the current version of Section 532(a)(8), a discharge under Chapter 7 does not discharge an individual debtor from any debt, unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependants, for –

(A)      (i) an educational benefit, overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institutional or

　　　　(ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or

(B)      Any other educational loan that is a qualified education loan, as defined in Section 221(d)(1) of the Internal Revenue Code of 1986; incurred by a debtor who is an individual.

42.

The Student Loans are not protected from dischargability under Section 523(a)(8)(A)(i).

43.

The Student Loans are not an educational benefit or loan made, insured or guaranteed by a governmental unit.

44.

The Student Loans were not originated under any program funded in whole or in part by a governmental unit or nonprofit institution.

45.

The originators on the Student Loans – Key Bank, Deutsche Bank, and SLM Private Credit – are neither governmental nor nonprofit institution, and because they are not funded by a governmental or nonprofit institution, the Student Loans are not protected from discharge under Section 523(a)(8)(A)(i).

46.

Additionally, the Student Loans are not protected from discharge as an educational benefit, scholarship, or stipend under Section 523(a)(8)(A)(ii).

47.

Only a loan that is a "qualified education loan" is non-dischargable under 11 U.S.C. Section 528(a)(8)(B).

48.

11 U.S.C. Section 528(a)(8)(B) incorporates the Internal Revenue Code definition of "qualified education loan".

49.

The Internal Revenue Code at 26 U.S.C. Section 221(d)(1) defines a "qualified education loan" as a loan incurred by an individual taxpayer **solely** to pay for a *qualified higher education expenses*. 26 U.S.C. 221(d)(1)(emphasis ours).

50.

Qualified higher education expenses, as used in Section 221(d)(1) of the IRS Code, incorporates the definition of *"cost of attendance"* at an educational institution from the Higher Education Act of 1965. 26 U.S.C. Section 221(d)(2); 20 U.S.C. Section 1087 (emphasis ours).

51.

The IRS Code does not set the "cost of attendance" but instead refers to the Higher Education Act and its definition of appropriate costs "as determined by the institution". 20 U.S.C. §108711(1).

52.

Debtors' educational institution was Saba at all relevant times.

53.

The Debtors' educational institution defines the "cost of attendance" used to determine whether a "student loan" is within the guidelines of a qualified higher educational expense.

54.

The Student Loans are not qualified education loans because (i) the loan amounts disbursed exceed the permitted cost of attendance; and (ii) the loan proceeds were disbursed for expenses that were not solely qualified higher education expenses.

55.

As the Student Loan amounts exceed the cost of attendance determined by the relevant university, the Student Loans cannot be qualified education loans and should be fully dischargeable in Debtors' Bankruptcy Proceeding.

56.

Alternatively, the amount by which the Student Loan proceeds exceed the cost of attendance for the relevant year makes the Student Loan a "mixed loans" – some proceeds were within the realm of "cost of attendance" and some proceeds exceeded the limit of the "cost of attendance".

57.

Because the Student Loans are mixed loans, the loans were not incurred "solely to pay for qualifying education expenses" and are therefore, fully dischargeable.

58.

As the Student Loans were not "qualified student loans" at the time of the inception of the loans, the Student Loans are dischargeable regardless of the identity of the Creditor that currently owns, holds or services the loans.

## CAUSE OF ACTION FOUR –
## SABA IS LIABLE ON THE FOWLER STUDENT LOANS

### 59.

Debtors incorporate the allegations contained within paragraph 1 through paragraph 58 above as is fully set forth herein:

### 60.

Fowler paid the first five semester of attendance at Saba with her own personal funds and incurred no student loan debt.

### 61.

For the Fall Semester, 2005, Fowler paid Saba tuition by her personal check in the amount of $7410. Rather than attending medical school in September, 2005, however, Fowler took a leave of absence to return to the United States to assist with Hurricane Katrina restoration. Therefore, Fowler did not attend the Fall semester 2005 at Saba.

### 62.

Saba agreed to apply the prepaid Fall 2005 tuition to Fowler's Winter 2006 Semester.

### 63.

Knowing that she would be short of funds for the Winter 2006 semester, in November, 2005, Fowler applied for a $46,660 student loan from Health Xpress. The loan proceeds were submitted directly to Saba which was to be paid to Fowler in three installments.

### 64.

On January 20, 2006, $14,975 in student loan proceeds was wired by Saba to directly to Fowler's account.

65.

In the Spring 2006 Semester, although approximately $31,000 in Health Xpress proceeds were being held by Saba, a second disbursement to Fowler was denied because she was only taking one class that Semester – making her ineligible for the loan proceeds as she was considered less than a part-time student.  This was Fowler's last semester attending Saba.

66.

On August 7, 2006, Fowler left the Island and returned to the United States to begin preparation for taking the USMLE Step One Examination.

67.

Fowler took the Step One Examination on four occasions but was unable to obtain a passing score.

68.

Saba refused to allow Fowler to begin clinical studies in Semester 6 without passing the Step One Examination (although others were granted this opportunity), however, on August 9, 2006, Saba paid itself $8,825 tuition from the Student Loan proceeds and wired $7,305 to Fowler's bank account.

69.

Fowler was never allowed to participate in the clinical requirements for Semester 6 although she was charged tuition for this Semester and her Xpress Loan proceeds held by Saba were used to fund this tuition.

70.

On November 9, 2006, Fowler received correspondence from Saba that the third disbursement of the Xpress loan would be cancelled and that Fowler would not be billed tuition for Semester 7 until she passed the Step One Examination.

71.

In July, 2007, Fowler was billed by Saba for tuition for Semester 7, however, because no loan proceeds were available, Fowler was instructed to apply for another student loan from Xpress loan.

72.

Although Saba should have had sufficient proceeds on hand to pay for Semester 7, and although Saba had already billed Fowler for tuition for Semester 6 that Fowler was not allowed to complete, Fowler applied for and Saba received the proceeds of a second Xpress loan of $57,690.

73.

From the second Xpress loan proceeds, Saba paid itself tuition of $8,070.00 for Semester 7 and $9,190 for Semester 8.  Saba then wired $21,200 in loan proceeds directly to Fowler.

74.

In June, 2009, Saba dismissed Fowler from medical school for "failure to progress."

75.

Saba paid itself $26,085.00 in school tuition for Semesters 6, 7 and 8 while simultaneously denying Fowler's attendance at clinical studies, because Fowler had not passed the Step One Examination.

76.

Additionally, upon information and belief, Saba diverted funds and cannot account for the full amount of the student loan proceeds from the two Xpress loans.

77.

To the extent that Fowler's Student Loans are not found to be dischargeable, the debt and accrued interest otherwise payable by Fowler should be recoverable from Saba as it paid itself proceeds for school attendance while simultaneously denying Fowler access to school.

78.

Saba is also liable to Fowler for Saba for false and deceptive practices that have injured Fowler.

## CAUSE OF ACTION FIVE –
## SABA LIABILITY TO DEMMONS

79.

Debtors incorporate the allegations contained within paragraph 1 through paragraph 78 above as is fully set forth herein:

80.

Saba held proceeds received from Fowler's student loans for longer than permitted by law.

81.

Saba is liable for deceptive practices.

82.

Saba failed to release Demmons' student loan proceeds within 45 days of his becoming a less than part time student and/or within 45 days of his failure to matriculate.  Saba withheld tuition payments from Demmons well in advance of his matriculation into subsequent semesters that were all in excess of the 45 day standard.  Specifically, semester 6 was withheld 455 days prior to matriculation, semester 7 was withheld 146 days prior to matriculation, semester 8 was withheld 199 days prior to matriculation, semester 9 was withheld 332 days prior to matriculation and semester 10 was withheld 152 days prior to matriculation.

83.

Demmons has been injured by Saba's actions.


**WHEREFORE** Debtors/Plaintiffs pray that after due proceedings be had, that the student loans be found to be dischargeable debt and/or alternatively, that Saba be held liable and ordered to pay applicable accrued debt plus interest and/or that Saba be held liable for damages to Demmons and Fowler and all other relief as is just and equitable.


Respectfully Submitted,

THE DE LEO LAW FIRM, L.L.C.

/s/ Robin R. De Leo
Bar Roll No. 20347
800 Ramon St.
Mandeville, LA 70448
(985) 727-1664
Jennifer@northshoreattorney.com
(985) 727-4388 Facsimile

**PLEASE SERVE:**

R3 Education Inc., dba Saba University School of Medicine
Corporate Service Company, Registered Agent
84 State Street
Boston, MA 02110

American Educational Services
Eddie Upshaw, Registered Agent
Rt. 2, Box 15
Spearsville, LA 71277

Maine Educational Services
National Education Association
Jonathan S R Beal, Registered Agent
PO Box 1400
Portland, ME 04104

Navient Solutions, Inc.
Corporate Service Company, Registered Agent
320 Somerulos St.
Baton Rouge, LA 70802-6129

Nelnet, Inc.
Angie R. Miller
121 S. 13th St., Ste 201
Lincoln, NE 68508