UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| | * | |
| William A. Demmons and | * | DIVISION "B" |
| Karen S. Fowler | * | |
| Debtors | * | |
| | * | CASE NO. 14-11638 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| | * | |
| William A. Demmons and | * | |
| Karen S. Fowler | * | |
| | * | |
|     Plaintiff/ Debtors | * | ADV PROC. NO. |
| | * | 15-1024 |
| versus | * | |
| | * | |
| R3 Education Inc., dba Saba University | * | |
| School of Medicine; | * | |
| American Educational Services; Maine | * | |
| Educational Services; Navient Solutions, | * | |
| Inc., and Nelnet, Inc | * | |
|     Defendants | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEBTORS' RESPONSE TO MOTION TO DISMISS OR
MOTION FOR MORE DEFINITE STATEMENT FILED BY
R3 EDUCATION, INC. D/B/A SABA UNIVERSITY SCHOOL OF MEDICINE**

William A. Demmons and Karen S. Fowler, Debtors herein, respond to the Motion to Dismiss or Motion for More Definite Statement (the "Motion to Dismiss") filed by Defendant R3 Education, Inc. d.b.a. Saba University School of Medicine ("Saba") as follows:

I.    **STATEMENT OF FACTS**

William A. Demmons ("Demmons") and Karen S. Fowler ("Fowler") are husband and wife and the Debtors/Plaintiffs in this Adversary Proceeding. Debtors filed for Chapter 7 relief

on June 25, 2014 and received their Chapter 7 discharge on September 30, 2014. Debtors thereafter filed a Complaint to Determine the Dischargeability of their numerous student loans.

Demmons and Fowler originally met in medical school while attending Saba University School of Medicine. Saba is a Defendant in this Adversary Proceeding. Although no funds were advanced by Saba as a "student loan" – Saba was the disbursing agent for all of the Debtors various student loans. Debtors named Saba as a Defendant in the Adversary Proceeding because Saba paid itself, using student loan proceeds, for semesters in which Debtor Fowler was not actually in attendance or registered for school. Further, because Saba held onto student loan proceeds for months after the receipt of same, Debtor was needlessly charged interest on loan proceeds that were not timely returned by Saba to the lenders.

Debtors action against Saba is contingent upon whether this Court finds that the student loans or some amount of the student loans are nondischargeable. If the loans are discharged in full, Debtors do not intend to proceed against Saba. If, however, some loans are found to be nondischargeable, Debtors were damaged by Saba's disbursement practices and as such, Saba should be liable to pay some amount of the loans found to be nondischargeable (if any).

II. **ARGUMENT**

Defendant Saba alleges that Debtors/Plaintiffs have failed to meet the standards of pleading as set forth in F.R.C.P. Rule 8 because Debtors have not stated a claim upon which relief can be granted. Alternatively, Saba asks that this Court order that Debtors provide a more definite statement as to the relief requested as to Saba. Debtors are not asking for their cake and eating it too. In other words, should the Court find all of the Debtors student loans dischargeable, Debtors are seeking no monetary relief from Saba. Apparently this is insufficient for the

Defendant which claims that damages must be sufficiently identified and quantified against it now. This is not the standards espoused by the Federal Rules of Civil Procedure.

The Complaint specifically sets forth the following allegations as to Saba:

11.

Saba University School of Medicine ("Saba") owned by R3 Education, Inc., is an offshore for-profit Caribbean medical school located in the Caribbean Netherlands Antilles, with the home office in Devens, Massachusetts.

12.

Debtors obtained a number of student loans to finance their attendance at Saba University, all of which loans are private, uninsured/non-subsidized loans.

Cause of Action Four –

59.

Debtors incorporate the allegations contained within paragraph 1 through paragraph 58 above as is fully set forth herein:

60.

Fowler paid the first five semester of attendance at Saba with her own personal funds and incurred no student loan debt.

61.

For the Fall Semester, 2005, Fowler paid Saba tuition by her personal check in the amount of $7410. Rather than attending medical school in September, 2005, however, Fowler took a leave of absence to return to the United States to assist with Hurricane Katrina restoration. Therefore, Fowler did not attend the Fall semester 2005 at Saba.

62.

Saba agreed to apply the prepaid Fall 2005 tuition to Fowler's Winter 2006 Semester.

63.

Knowing that she would be short of funds for the Winter 2006 semester, in November, 2005, Fowler applied for a $46,660 student loan from Health Xpress. The loan proceeds were submitted directly to Saba which was to be paid to Fowler in three installments.

64.

On January 20, 2006, $14,975 in student loan proceeds was wired by Saba to directly to Fowler's account.

65.

In the Spring 2006 Semester, although approximately $31,000 in Health Xpress proceeds were being held by Saba, a second disbursement to Fowler was denied because she was only taking one class that Semester – making her ineligible for the loan proceeds as she was considered less than a part-time student. This was Fowler's last semester attending Saba.

66.

On August 7, 2006, Fowler left the Island and returned to the United States to begin preparation for taking the USMLE Step One Examination.

67.

Fowler took the Step One Examination on four occasions but was unable to obtain a passing score.

68.

Saba refused to allow Fowler to begin clinical studies in Semester 6 without passing the Step One Examination (although others were granted this opportunity), however, on August 9, 2006, Saba paid itself $8,825 tuition from the Student Loan proceeds and wired $7,305 to Fowler's bank account.

69.

Fowler was never allowed to participate in the clinical requirements for Semester 6 although she was charged tuition for this Semester and her Xpress Loan proceeds held by Saba were used to fund this tuition.

70.

On November 9, 2006, Fowler received correspondence from Saba that the third disbursement of the Xpress loan would be cancelled and that Fowler would not be billed tuition for Semester 7 until she passed the Step One Examination.

71.

In July, 2007, Fowler was billed by Saba for tuition for Semester 7, however, because no loan proceeds were available, Fowler was instructed to apply for another student loan from Xpress loan.

72.

Although Saba should have had sufficient proceeds on hand to pay for Semester 7, and although Saba had already billed Fowler for tuition for Semester 6 that Fowler was not allowed to complete, Fowler applied for and Saba received the proceeds of a second Xpress loan of $57,690.

73.

From the second Xpress loan proceeds, Saba paid itself tuition of $8,070.00 for Semester 7 and $9,190 for Semester 8. Saba then wired $21,200 in loan proceeds directly to Fowler.

74.

In June, 2009, Saba dismissed Fowler from medical school for "failure to progress."

75.

Saba paid itself $26,085.00 in school tuition for Semesters 6, 7 and 8 while simultaneously denying Fowler's attendance at clinical studies, because Fowler had not passed the Step One Examination.

76.

Additionally, upon information and belief, Saba diverted funds and cannot account for the full amount of the student loan proceeds from the two Xpress loans.

77.

To the extent that Fowler's Student Loans are not found to be dischargeable, the debt and accrued interest otherwise payable by Fowler should be recoverable from Saba as it paid itself proceeds for school attendance while simultaneously denying Fowler access to school.

78.

Saba is also liable to Fowler for Saba for false and deceptive practices that have injured Fowler.

Cause of Action Five-

79.

Debtors incorporate the allegations contained within paragraph 1 through paragraph 78 above as is fully set forth herein:

80.

Saba held proceeds received from Fowler's student loans for longer than permitted by law.

81.

Saba is liable for deceptive practices.

82.

Saba failed to release Demmons' student loan proceeds within 45 days of his becoming a less than part time student and/or within 45 days of his failure to matriculate. Saba withheld tuition payments from Demmons well in advance of his matriculation into subsequent semesters that were all in excess of the 45 day standard. Specifically, semester 6 was withheld 455 days prior to matriculation, semester 7 was withheld 146 days prior to matriculation, semester 8 was withheld 199 days prior to matriculation, semester 9 was withheld 332 days prior to matriculation and semester 10 was withheld 152 days prior to matriculation.

83.

Demmons has been injured by Saba's actions.

The Debtors/Plaintiffs have met the burden of the Federal Rules of Civil Procedure for sustaining its cause of action against the Defendant.

**A. Plaintiff/Debtors Complaint States a Claim against Saba. The Motion to Dismiss Should be Denied.**

As the Supreme Court held in Bell Atlantic Corp v. Twombly, the pleading standard rule 8 announces does not require "detailed factual allegations..." 550 US 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2009). The pleading standards that apply to a 12(b) motion to dismiss arise out of the requirement in Fed R Civ P. 8(a)(2) that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In Bell Atlantic Corp. v. Twombly, 550 US 544 (2007), the Supreme Court explained that to survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

When considering a Rule 12(b) motion, a court must accept all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009). Motions to dismiss under Rule 12(b) are disfavored and rarely granted. In re Morey, 2012 WL369486 (Bankr. SD Miss 2012); *citing* Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981).

In Twombly, the Supreme Court revisited the often-quoted language in its decision in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed at the pleading stage "unless it appears ***beyond a doubt that the plaintiff can prove no set of facts in support of his claim***." *Id*. at 45-46. (emphasis ours).

A motion under Federal Rule of Civil Procedure (b) should be granted only if it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of its claim. Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008)(*citing* Bell Atl. Corp v. Twombly, 550 U.S. 544, 556-57 (2007). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to Plaintiffs. Truman v. United States, 26 F.3d 592, 594 (5th Cir. 1994).

Plaintiffs have specifically set forth various allegations that support their theory that Saba may be liable to the Plaintiffs based upon Saba's negligence in its role as the disbursing agent.

B. **The Complaint Adequately Pleads Plaintiffs Cause of Action Against Saba. The Motion for a More Definite Statement Should Be Denied.**

Alternatively, Defendant Saba moves that Plaintiffs provide a more definite statement as to their claims against Saba. Under F.R.C.P. rule 12(e), a party moving for a more definite statement must show that the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response."

The standard for evaluating a motion for more definite statement is whether the complaint is "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." Babcock & Wilcox Co. v. McGriff, Seibels, & Williams, Inc., 235 F.R.D. 632, 633 (E.D. La. 2006); Phillips vs ABB Combustion ___ Inc No. 13 – 594, 2013 WL315524 (EDLa 2013). The availability of extensive discovery and defendant seeking information within defendant's own knowledge are other factors mitigating in favor of denying a Motion to Dismiss. *See* Babcock, 235 FRD at 63.

When evaluating a motion for more definite statement the Court must assess the complaint in light of the minimal pleading requirements of Rule 8. Hebert v Loyola University of New Orleans, 2007 WL2710954 (E.D. La, 2007).. Under Fed. R. Civ. P. 8, "A pleading ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief....". The 12(e) motion is disfavored given the "great liberality" of Rule 8 and a plaintiff should not be required to amend his complaint when the allegations are sufficient to withstand a motion to dismiss. *Id.* (quoting Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir.1959)).

In the current case, minimal discovery by Saba would clarify all of Plaintiff's specific allegations. The allegations in the complaint are not so ambiguous and unintelligible so as to expose Defendant to prejudice when answering the lawsuit. Defendant can answer the allegations with general denials where appropriate. Further, as disbursing agent of all the student loans at issue in the dischargeability complaint, the particular information sought by Saba should be part of its own books and records.

III. **CONCLUSION**

Wherefore, based upon the foregoing, the Motion to Dismiss and the Motion for More Definite Statement filed by Saba should be denied.

    Respectfully submitted,

    THE DE LEO LAW FIRM, L.L.C.

    /s/ Robin R. De Leo
    Bar Roll No. 20347
    800 Ramon St.
    Mandeville, LA 70448
    (985) 727-1664
    Jennifer@northshoreattorney.com
    (985) 727-4388 Facsimile