# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| | * | |
| **William A. Demmons and** | * | DIVISION "B" |
| **Karen S. Fowler** | * | |
| **Debtors** | * | |
| | * | CASE NO. 14-11638 |

*************************************************************

| | | |
|---|---|---|
| | * | |
| **William A. Demmons and** | * | |
| **Karen S. Fowler** | * | |
| | * | |
| Plaintiff/ Debtors | * | ADV PROC. NO. 15-1024 |
| | * | |
| versus | * | |
| | * | |
| **R3 Education Inc., dba Saba University** | * | |
| **School of Medicine;** | * | |
| **American Educational Services; Maine** | * | |
| **Educational Services; Navient Solutions,** | * | |
| **Inc., and Nelnet, Inc** | * | |
| | * | |
| Defendants | * | |
| | * | |

*****************************************************************

## DEBTORS' FIRST AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOANS

William A. Demmons, III and Karen S. Fowler, Debtors herein ("Debtors") file this First Amended Complaint to supplement their original Complaint to Determine the Dischargability of Student Loans (the "Student Loans") and respectfully represent as follows[1]:

### PARTIES, JURISDICTION AND VENUE

4.1

---

[1] This First Amended Complaint is supplementing the parties, allegations and causes of action set forth by the Debtors in their Original Complaint. Paragraph Numbers are based upon the Original Complaint.

Also named as defendants in this Adversary Proceeding are the owners/holders/guarantors of the Debtors' multiple student loans serviced by American Education Service ("AES"), that being:

(i) FCDB NPSL Trust 2010-1 and/or FCDB PSL Trust through FCDB NPSL LLC, a Delaware limited liability company authorized to do business in Louisiana;

(ii) Deutsche Bank – Parts 2 through Deutsche Bank, a foreign corporation authorized to do business in Louisiana; and

(iii) Key Bank, N.A., a national banking institution located in Ohio and doing business in Louisiana, issuer of the MedAchiever Loan.

These owners/holders and/or guarantors of the Student Loans are collectively referred to with the other defendants as the "Defendants" and/or "Student Loan Creditors".

5.1

Defendant FCDB NPSL, Defendant Deutsche Bank, and Defendant Key Bank were named as creditors in the Debtors' Chapter 7 bankruptcy proceeding individually or through the lenders/owners student loan servicing company, AES.

**FACTUAL ALLEGATIONS**

12.1

Saba acted as the processor of the Debtors student loans and Saba would pay its own tuition and other school expenses prior to remitting proceeds to Debtors to cover permitted living expenses.

12.2

As processor of its students' loans, Saba reviewed the student loan applications, certified the student enrollment status and eligibility, and distributed the proceeds received from various student loan lenders.

12.3

The student loan applications contain a School Certification to be completed by Saba's Financial Aid Office which requires that Saba certify the student's attendance at Saba during the academic year for which the loan is applied.

## CAUSE OF ACTION FOUR –
## SABA IS LIABLE ON THE FOWLER STUDENT LOANS

65.

Original Paragraph 65 in the Complaint has been rewritten and replaced as follows:

Plaintiffs incorporate the allegations set forth in Paragraphs 1-64 above as if specifically plead herein.

65.1

In the Spring 2006 Semester, although approximately $31,000.00 in Health Xpress proceeds were available to Saba, a second disbursement to Fowler was denied because she was only taking one class that semester – making her ineligible for the loan proceeds as she was considered less than a part-time student. This was Fowler's last semester attending Saba.

68.

Paragraph 68 of the Original Complaint has been re-written and replaced as follows:

Saba refused to allow Fowler to begin the Clinical Medicine Program in Semester 6 without passing the Step One Examination (although others were granted this opportunity), however, on August 9, 2006, Saba paid itself $8,825.00 tuition from the Student Loan proceeds and wired $7,305.00 to Fowler's bank account.

69.

Paragraph 69 of the Original Complaint has been re-written and replaced as follows:

Fowler was never allowed to participate in the Clinical Medicine Program for Semester 6 although she was charged tuition for this Semester and her Xpress Loan proceeds held by Saba were used to fund this tuition.

### CAUSE OF ACTION 4.1 – SABA FRAUDULENT MISREPRESENTATION DAMAGED FOWLER

76.1

Plaintiffs incorporate the allegations set forth in Paragraphs 1-76 above as if specifically plead herein.

76.2

Saba paid itself at least $26,085.00 in school tuition for Semesters 6, 7 and 8 while simultaneously denying Fowler's attendance in the Clinical Medicine Program.

76.3

Saba informed Fowler that she had to pay for attendance at Saba in order to continue to be eligible to take the Step One Examination.

76.4

Saba acted with intent to deceive both Fowler and the student loan lender. Saba certified to the lender that Fowler was a full time student while at the same time denying Fowler access to the Clinical Medicine Program.

76.5

According to the Saba Student Handbook:

Students, whose accounts have not been paid in full or otherwise cleared by the finance office, will be subject to cancellation of class enrollment. SABA University reserves the right to withhold all diplomas, degrees, official transcripts and any other documentation from any student with outstanding financial obligations.

76.6

Fowler relied upon Saba's misrepresentation as she believed that by applying the loans, she would continue to be an active student and be allowed to participate in the Clinical Medicine Program.

76.7

Fowler was damaged as a result of the misrepresentations as she was forced to incur debt of at least $26,050.00 in student loans paid to Saba in exchange for no services provided by Saba.

76.8

Although Fowler questioned the appropriateness of Saba paying itself for Semesters 6, 7 and 8, Saba assured Fowler on numerous occasions that it would provide an accounting of the loan fees spent and applied and that all actions taken by Saba were appropriate.

77.1

To the extent that Fowler's Student Loans are not found to be dischargeable, the debt and accrued interest otherwise payable by Fowler should be recoverable from Saba as it committed an intentional tort by fraudulently paying itself proceeds for school attendance while simultaneously denying Fowler access to school.

77.2

Further, as a result of Saba's intentional misrepresentation, Fowler has been damaged as she was forced to incur attorneys' fees in the filing and prosecution of this Adversary Proceeding.

77.3

To the extent that this Court finds Saba liable for repaying the Fowler loans, Fowler is also entitled to damages in the form of attorneys' fees she has incurred in the filing and prosecution of this action.

### CAUSE OF ACTION 4.2 –
### SABA BREACHED ITS WRITTEN CONTRACT WITH FOWLER CAUSING DAMAGES BY INCREASING STUDENT LOAN DEBT

78.1

Plaintiffs incorporate the allegations set forth in Paragraphs 1-78 above as if specifically plead herein.

78.2

Saba is also liable to Fowler for breach of contract.

78.3

Saba's student handbook, financial aid applications and billing statements constitute a written or implied contract with Fowler.

78.4

The contract between Saba and Fowler consisted of her promise to pay tuition and Saba's promise to provide academic services.

78.5

The contractual obligations between Saba and Fowler are embodied in the student handbook and the fee bills.

78.6

Saba breached its contract to Fowler by failing to provide any service in exchange for the student loan proceeds received by Saba for Semesters 6, 7 and 8.

78.7

No educational services were provided by Saba to Fowler for Semesters 6, 7 and 8.

78.8

Saba breached the contract with Fowler by failing to provide any consideration to Fowler in exchange for the student loan proceeds received by Saba for Semesters 6, 7 and 8.

78.9

Fowler has been damaged by Saba's breach of contract as Fowler is currently liable to student loan lenders for at least $26,050.00 in student loans paid to Saba for no consideration.

78.10

Fowler has also been damaged by Saba's breach of contract as she has been forced to incur attorneys' fees in the filing and prosecution of this Adversary Proceeding.

78.11

To the extent that this Court orders Saba's repayment of student loan proceeds, Saba is liable for Fowler's attorneys' fees in the filing and prosecution of this Adversary Proceeding.

## CAUSE OF ACTION FIVE –
## SABA LIABILITY FOR BREACH OF CONTRACTUAL OBLIGATIONS TO DEMMONS

80.

Original Complaint paragraph 80 is deleted and replaced with the following:

The Saba student handbook, financial aid applications, and billing invoices constituted a contract between Saba and Demmons.

80.1

The Saba Student Handbook provides:

Students will be billed approximately two months prior to the beginning of each new semester and payment is due 30 days prior to matriculations. Refunds will be calculated by the financial aid office and refunded within a 30 day period.

80.2

If the student doesn't meet the eligibility enrollment guidelines (greater than half-time enrollment and matriculated) the student's loan proceeds are to be returned by Saba to the student loan lender.

80.3

Saba breached its obligation to return the loan proceeds as set forth in the Student Handbook.

80.4

Saba failed to follow reasonable industry practices in timely refunding student loan monies to Demmons student loan lenders.

80.5

In particular, Saba withheld the return of student loan proceeds to Demmons' student loan lenders for Demmons attendance during Semesters 6, 7, 8, 9 and 10.

80.6

Saba withheld Demmons' student loan proceeds for 455 days prior to matriculation into Semester 6.

80.7

Saba withheld Demmons' student loan proceeds for 146 days prior to matriculation into Semester 7.

80.8

Saba withheld Demmons' student loan proceeds for 199 days prior to matriculation into Semester 8.

80.9

Saba withheld Demmons' student loan proceeds for 332 days prior to matriculation into Semester 9.

80.10

Saba withheld Demmons' student loan proceeds for 152 days prior to matriculation into Semester 10.

80.11

Demmons has been injured by Saba's failure to return the student loan proceeds within a reasonable period of time. As a result, Demmons' was charged interest for use of the funds during the period of time in which Saba simply sat on the proceeds.

80.12

If this Court should find that the Demmons student loans are not dischargeable, Demmons avers that Saba should be liable for the interest charged to Demmons on the loan proceeds that were not returned to student loan lenders.

80.13

In addition to being unnecessarily charged interest on the funds withheld by Saba, Demmons has been injured in that he has been forced to incur attorneys' fees in the filing and prosecution of this Adversary Proceeding.

81.

Original Complaint paragraph 81 is deleted.

82.

Original Complaint Paragraph 82 is deleted.

83.

Original Complaint Paragraph 83 is deleted.

**WHEREFORE** Debtors/Plaintiffs pray that their First Amended Complaint supplementing and amending their Original Complaint filed herein be deemed sufficient and that after due proceedings be had, that the student loans be found to be dischargeable debt and/or alternatively, that Saba be held liable and ordered to pay applicable accrued debt plus interest on nondischarged student loans and/or that Saba be held liable for damages to Demmons and Fowler and all other relief as is just and equitable.

          Respectfully Submitted,

          THE DE LEO LAW FIRM, L.L.C.

          <u>/s/ Robin R. De Leo</u>
          Bar Roll No. 20347
          800 Ramon St.
          Mandeville, LA 70448
          (985) 727-1664
          Jennifer@northshoreattorney.com
          (985) 727-4388 Facsimile

**PLEASE SERVE:**

FCDB NPSL LLC
Through its Agent for Service:
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

FCDB NPSL LLC
c/o Goal Structured Solutions
Student Lending Dept.
401 West A. Street
Suite 1300
San Diego, CA 92101

Deutsche Bank
Through its Legal Department
60 Wall Street
36th Floor
New York, New York 10005

Deutsche Bank Parts 2
Student Lending Dept
60 Wall Street
New York, NY 10005

Key Bank, N.A.
Through its CEO
Beth Mooney
127 Public Sq.
Cleveland, OH 44114

Key Bank, N.A.
Through KeyBank Risk Operations
4910 Tiedeman Road
OH-01-51-4002
Brooklyn, OH 44144