## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | ' | |
| | ' | **CASE NO. 14-11638** |
| **WILLIAM A. DEMMONS and** | ' | |
| **KAREN S. FOWLER** | ' | |
| | ' | |
| | ' | **Chapter 7** |
| **Debtors.** | ' | |

| | | |
|---|---|---|
| **WILLIAM A. DEMMONS and** | ' | |
| **KAREN S. FOWLER** | ' | |
| | ' | |
| **Plaintiffs,** | ' | |
| | ' | |
| **vs.** | ' | |
| | ' | **Adversary No. 15-01024** |
| **R3 EDUCATION INC., d/b/a** | ' | |
| **SABA UNIVERSITY SCHOOL OF** | ' | |
| **MEDICINE; AMERICAN** | ' | |
| **EDUCATIONAL SERVICES;** | ' | |
| **NAVIENT SOLUTIONS, INC., AND** | ' | |
| **NELNET, INC.** | ' | |
| | ' | |
| **Defendants.** | ' | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT R3 EDUCATION, INC. d/b/a SABA UNIVERSITY SCHOOL OF MEDICINE

Defendant R3 Education, Inc. d/b/a Saba University School of Medicine ("Saba") respectfully files this Memorandum in support of Plaintiffs' Motion for Summary Judgment (the "Motion for Summary Judgment"), stating as follows.

## INTRODUCTION

1.     This is an action filed by Plaintiffs for a declaration that their medical school loans are dischargeable. Defendant Saba University School of Medicine is the school that Plaintiffs attended, and is not a party to the dischargeability claims. However, in the same

1

adversary complaint, Plaintiffs have made limited allegations against Saba and have named it as a defendant.

2.     Plaintiffs assert essentially two claims against Saba, both of which should be resolved on summary judgment.  First, as to Plaintiff Karen S. Fowler ("Ms. Fowler"), Ms. Fowler asserts that she paid tuition for certain clinical semesters of study at Saba (semesters 6, 7, and 8) but was not allowed to participate in clinical programs, effectively meaning that she received no value for the tuition paid. (Amended Complaint [Docket #58], ¶¶ 76.1 - 77.3).  **However, Ms. Fowler received a refund of the tuition**, and the reason that she was not able to participate in clinical programs was that she was unable to pass the United States Medical Licensing Examination Step 1 Exam ("USMLE Step 1 Exam"), a prerequisite to participating in clinical programs.

3.     Second, as to Plaintiff William A. Demmons ("Mr. Demmons"), Mr. Demmons asserts a breach of contract claim based on the following.  Mr. Demmons asserts that during his clinical semesters, Mr. Demmons paid tuition for each semester in advance, but then faced long delays in commencing each clinical program.  Mr. Demmons asserts that, as to each such delay, Saba should have refunded tuition to him during the period of delay. (Amended Complaint [Docket #58], ¶¶ 80-80.13)  Essentially, Mr. Demmons' claim is that he was required to pay tuition too far in advance. (He acknowledges that he did receive the clinical education that he paid for.)  However, Saba had no contractual obligation to refund tuition paid "too far in advance."  Mr. Demmons received the clinical education that he paid for.  In addition, any delays were caused by Mr. Demmons himself, since his desired clinical placements (all in Louisiana) simply were not immediately available at the times requested.

**FACTUAL BACKGROUND**

4.     Factual references herein are made to Saba's Statement of Undisputed Fact ("Statement of Undisputed Fact") filed herewith, and to the following Exhibits attached to the Statement of Undisputed Fact:

- Exhibit 1     Declaration of Terry J. Moya, Saba's Chief Financial Officer ("Moya Declaration")

- Exhibit 2     Written Responses Provided By Plaintiffs to Saba's Interrogatories and Requests for Production ("Discovery Responses")

- Exhibit 3     Saba Catalog (2004-2006), excerpt provided by Plaintiffs attached to Discovery Responses

- Exhibit 4     Saba Catalog (2015-2017), excerpt provided by Plaintiffs attached to Discovery Responses

- Exhibit 5     Invoice for Semester 6 billed to Ms. Fowler, produced by Plaintiffs attached to Discovery Responses

5.     Plaintiffs William A. Demmons and Karen S. Fowler filed Chapter 7 cases in this Court on June 25, 2014.

6.     On March 12, 2015, Mr. Demmons and Ms. Fowler filed a complaint ("Original Complaint") [Docket #1] commencing this adversary proceeding, seeking a determination that their medical school loans are dischargeable.  This same action also asserted the claims against Saba that are the subject of the present Motion for Summary Judgment.

7.     On July 30, 2015, in response to a Motion to Dismiss filed by Saba, Plaintiffs filed an Amended Complaint ("Amended Complaint") [Docket #58] amending the claims asserted against Saba.

8.     Mr. Demmons and Ms. Fowler both attended medical school at Saba beginning on January 5, 2004. (Original Complaint, ¶10)  Like other medical schools, Saba's curriculum generally consisted of two parts: first, a "Basic Sciences" component consisting of five semesters

3

of classroom work, followed by, second, a "Clinical Medicine" program comprised of 72 weeks of clinical clerkships in hospitals in the United States and abroad, and eight weeks of a Research: Literature Review and Analysis module. (Statement of Undisputed Fact, ¶13 and Exhibit 4 at p. 10)

9.     In order to progress beyond the "Basic Sciences" component and participate in clinical programs, Saba's longstanding policy requires that students pass the USMLE Step 1 examination, which is the first of a three-step examination required for medical licensure in the United States. (Statement of Undisputed Fact, ¶14 and Exhibit 1 at ¶7)

10.    Both Mr. Demmons and Ms. Fowler successfully completed their "Basic Sciences" coursework in 2006. (Original Complaint, ¶16)

11.    Mr. Demmons successfully passed the USMLE Step 1 Examination on October 31, 2007.  Mr. Demmons took part in clinical programs during his semesters 6-10 at Saba, beginning in December, 2007 and continuing  through May, 2010. (Original Complaint, ¶¶16, 18)[1]

12.    The timing of Mr. Demmons' clinical programs was dependent on program availability at the specific program locales requested by Mr. Demmons including programs in Shreveport, New Orleans, and Houma, Louisiana.  Any delays experienced were caused by the fact that Mr. Demmons requested specific program locales, and such locales had limited availability and fixed start times for such clinical programs. (Statement of Undisputed Fact, ¶17 and Exhibit 1 at ¶10)

---

[1] Not all of this detail is contained in the Complaint; However Saba submits that these facts will be undisputed.

4

13.     Mr. Demmons successfully completed his entire program at Saba and graduated with a Doctor of Medicine degree in May, 2010. (Original Complaint, ¶18)

14.     In anticipation of her clinical semesters, Ms. Fowler borrowed, under a student loan, a total of $25,810.00 for tuition and fees covering semesters 6 (fall of 2006), 7 (fall of 2007), and 8 (spring of 2008). (Statement of Undisputed Fact, ¶19 and Exhibit 1 at ¶5)

15.     Saba has had a longstanding practice and policy, in place prior to, during, and after the period 2006 through 2009, that students are not allowed to participate in clinical programs until after successful passage of the United States Medical Licensing Examination Step 1 Exam ("USMLE Step 1 Exam").  This policy is consistent with industry norms. (*See* Exhibit "1" hereto at ¶7)

16.     Ms. Fowler was not able to progress to clinical programs, since Ms. Fowler attempted and failed the USMLE Step 1 Exam on three separate occasions between 2007 and 2009. (Statement of Undisputed Fact, ¶21 and Exhibit 1 at ¶8)

17.     As a result of her failure to pass the USMLE Step 1 Exam, Karen S. Fowler was academically dismissed from Saba effective June 9, 2009 for failure to progress. (Statement of Undisputed Fact, ¶22 and Exhibit 1 at ¶9)

18.     With the exception of a non-refundable administrative fee ($100.00) and a non-refundable deposit ($500.00), the tuition and fees borrowed by Karen S. Fowler covering semesters 6 (fall of 2006), 7 (fall of 2007), and 8 (spring of 2008) were refunded to the lender through a check in the amount of $25,210.00 issued by Saba and dated June 9, 2009, a copy of which is attached as Exhibit "A" to the Moya Declaration. (Statement of Undisputed Fact, ¶23 and Exhibit 1 at ¶6 and attached Exhibit "A" thereto)

5

19.     In the Amended Complaint, Plaintiffs assert essentially two claims against Saba.

First, Ms. Fowler asserts that she paid tuition for certain clinical semesters of study at Saba

(semesters 6, 7, and 8) but was not allowed to participate in clinical programs, effectively

meaning that she received no value for the tuition paid. (Amended Complaint, ¶¶ 76.1 - 77.3,

78.1-78.11).  Specifically, Ms. Fowler asserts as follows:

- Plaintiffs assert: "To the extent that Fowler's Student Loans are not found to be dischargeable, the debt and accrued interest otherwise payable by Fowler should be recoverable from Saba as it paid itself proceeds for school attendance while simultaneously denying Fowler access to school." (Complaint, ¶77).

- Plaintiffs assert that Saba made a fraudulent misrepresentation damaging to Ms. Fowler during "Semesters 6, 7, and 8" of Ms. Fowler's studies at Saba. (Amended Complaint, ¶¶ 76.1 - 77.3)

- Plaintiffs assert that the "intentional tort" of fraudulent misrepresentation renders Saba liable for her student loan debt and her attorneys' fees (Amended Complaint, ¶¶ 77.1-77.3)

- Plaintiffs assert that "Saba breached its contract" (consisting of student handbook, financial aid applications and billing statements) with Ms. Fowler "by failing to provide any service in exchange for the student loan proceeds received by Saba for Semesters 6, 7, and 8." (Amended Complaint, ¶¶ 78.1 - 78.11).

20.     Ms. Fowler asserts her claims both as claims for intentional misrepresentation,

and breach of contract. (Amended Complaint, ¶¶ 76.1 – 78.11)

21.     Second, Mr. Demmons asserts a breach of contract claim based on the following.

Mr. Demmons asserts that during his clinical semesters, Mr. Demmons paid tuition for each

semester in advance, but then faced long delays in commencing each clinical program.  Mr.

Demmons asserts that, as to each such delay, Saba should have refunded tuition to him during

the period of delay. (Amended Complaint, ¶¶ 80-80.13).  Specifically, Mr. Demmons asserts as

follows:

- Plaintiffs assert that Saba breached its contract (consisting of student handbook, financial aid applications and billing statements) with Mr. Demmons by failing

"to return the loan proceeds as set forth in the Student Handbook." (Amended Complaint, ¶80.3)

- Plaintiffs assert that Mr. Demmons paid tuition 455 days in advance of Semester 6, 146 days in advance of Semester 7, 199 days in advance of Semester 8, 332 days in advance of Semester 9, and 152 days in advance of Semester 10. (Amended Complaint, ¶¶80.5-80.10)

- Plaintiffs assert that in light of these delays in commencing clinical programs, that "Saba failed to follow reasonable industry practices in timely refunding student loan monies to Demmons student loan lenders." (Amended Complaint, ¶80.4)

## ARGUMENT

### A.    Legal Standards

22.    As the Court is well aware, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated that the question for the Court "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

23.    To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585-87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby,*

7

*Inc.*, 477 U.S. 242, 249-50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of material fact exists, the nonmoving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. *Leon Chocron Publcidad Y Editoria, S.A. v. Jimmy Swaggart Ministries,* 990 F.2d 1253 (5th Cir. 1993).

24.     Plaintiffs have styled their claims against Saba as fraudulent misrepresentation or breach of contract. A fraudulent misrepresentation claim requires, at a minimum, a misrepresentation, justifiable reliance on the misrepresentation, and damages. E.g., *LeBlanc v. Wyeth, Inc.*, 495 F.Supp.2d 609, 614-15 (W.D.La. 2007); *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1460 (5th Cir.1991) ("Under Louisiana law the elements of a claim of fraudulent misrepresentation are: (1) a misrepresentation [or suppression] of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury.")[2]

25.     A breach of contract requires, at a minimum, an obligation to perform, breach of the obligation, and damages. *E.g., F.H. Paschen, S.N. Nielsen & Associates, LLC v. Southeastern Commercial Masonry, Inc*., Case No. 12-2799 2015 WL 7015389 *2 (E.D.La. Nov. 10, 2015).[3]

---

[2] Saba does not acknowledge or admit that Louisiana law applies. However, Saba submits that, regardless of choice of law, a claim for fraudulent misrepresentation generally requires the basic elements of a misrepresentation, justifiable reliance on the misrepresentation, and damages.

[3] Saba does not acknowledge or admit that Louisiana law applies. However, Saba submits that, regardless of choice of law, a claim for breach of contract generally requires the basic elements of an obligation to perform, breach, and damages.

**B.**     <u>Saba is Entitled to Summary Judgment on Claims Asserted by Ms. Fowler</u>

26.     Ms. Fowler's claim is that she paid tuition for certain clinical semesters of study at Saba (semesters 6, 7, and 8) but was not allowed to participate in clinical programs, effectively meaning that she received no value for the tuition paid. (Amended Complaint, ¶¶76.1 - 77.3, 78.1-78.11)

27.     This claim fails under any legal theory. The central premise of Ms. Fowler's argument is that fraud, misrepresentation, or breach was committed because Saba "fraudulently paid itself proceeds for school attendance while simultaneously denying Fowler access to school" and "fail[ed] to provide any service in exchange for the student loan proceeds." (Amended Complaint, ¶¶77.1, 78.6) **<u>However, Ms. Fowler received a refund</u>** and Saba did not retain the student loan proceeds. As discussed in the Moya Declaration, Ms. Fowler paid $25,810.00[4] in tuition through a student loan, and the lender received a refund check in the amount of $25,210.00 (reflecting non-refundable administrative fees of $100.00 and a $500.00 deposit). A copy of the refund check is attached to the Moya Declaration. (Statement of Undisputed Fact, ¶23 and Exhibit 1 at ¶6 and attached Exhibit "A" thereto)

28.     In addition, there was no breach or fraud because Saba did not wrongfully prevent Ms. Fowler from participating in clinical programs. Ms. Fowler was not able to participate in clinical programs for the basic reason that she was never able to satisfy the pre-requisite of passing the Step 1 USMLE Exam. This was a basic pre-requisite and requirement for Ms.

---

[4] Saba asserts that this $25,810.00 figure is undisputed. While Ms. Fowler's discovery answers and Complaint reference a figure of $26,085.00 (Statement of Undisputed Fact, Exhibit 2 at Response to Interrogatory No. 4; Amended Complaint, ¶¶75 and 76.2), this figure is calculated using an incorrect figure of $8,825.00 for tuition for Semester 6. As the invoice produced by Ms. Fowler in the Discovery Responses indicates, the actual amount of tuition billed for Semester 6 was $8,550.00. (Statement of Undisputed Fact, Exhibit 5).

NO:1451240/00041:182023v2

Fowler to progress to clinical programs. (Statement of Undisputed Fact, ¶14 and Exhibit 1 at ¶7)[5]

Because Ms. Fowler was unable to pass the exam after three attempts, she was unable to progress

to the clinical programs.

      C.    **Saba is Entitled to Summary Judgment on Claims Asserted by Mr. Demmons**

29.    Mr. Demmons' breach of contract claim is based on the following.  Mr. Demmons

asserts that during his clinical semesters, Mr. Demmons paid tuition for each semester in

advance, but then faced long delays in commencing each clinical program.  Mr. Demmons

asserts that, as to each such delay (ranging from 152 days for Semester 10 to 455 days for

Semester 6), Saba should have refunded tuition to him during the period of delay. (Amended

Complaint, ¶¶ 80-80.13)

30.    Mr. Demmons styles his claim for breach of contract, but Mr. Demmons has not

(and cannot) identify any contractual obligation on the part of Saba to issue refunds under these

circumstances.

31.    Mr. Demmons points to provisions of the Saba catalog which are simply

inapplicable. (Amended Complaint, ¶¶80.1-80.3)[6]  The provision of the Saba catalog (from

2004-2006) relied upon by Mr. Demmons states as follows:

---

[5] This basic pre-requisite is clearly set forth in Saba's catalog, which Plaintiffs seek to rely on as part of the "contract" between the parties. (Statement of Undisputed Fact, Exhibit "4" at pp. 17; Amended Complaint, ¶78.3)

[6] Although the Complaint refers to the "Saba Student Handbook," the reference appears to be to excerpts from the Saba catalog for 2004-2006 which was produced in the Discovery Responses. (In response to a discovery request for all materials constituting the "student handbook, Plaintiffs only produced the materials attached as Exhibits "3" and "4" to the Statement of Undisputed Fact; See Statement of Undisputed Fact, Exhibit "2" at Response to Request for Production No. 31.)

Tuition Payment Policies

All students are responsible for payment of tuition and fees in U.S. personal check, bank check or money order one month prior to matriculation into each new semester, whether into the Basic Sciences or Clinical Medicine program. A $500.00 deposit is due within thirty days of the date of the letter of acceptance. A student may request a refund within three days of receipt of the deposit. After the three-day grace period, the deposit is nonrefundable and is applied to the first term Basic Sciences tuition. All students entering into first semester must pay tuition 45 days prior to matriculation. If payment is made by check, the cancelled check will serve as the student's receipt. If a student remits a check that is returned because of insufficient funds, he or she must make any future payments to the university in the form of a U.S. bank check or money order. Payment of all tuition and fees are due in full by the due date specified on the student bill. A returned check fee of $35.00 will be imposed for a personal check returned not honored. Students will be billed approximately two months prior to the beginning of each new semester. Invoices are mailed to the permanent address on record for registered students. Payments for a student's semester bill should be directed to the Bursar's Office. If a bill is not received, it is the student's responsibility to contact the Finance Office. All fees for the Clinical Medicine program must be paid prior to graduation. Students whose account has not been paid in full, or otherwise cleared by the Finance Office, will be subject to cancellation of class enrollment. Saba University reserves the right to withhold all diplomas, degrees, official transcripts and any other documentation from any student with outstanding financial obligations (Rates are subject to change without notice).

(Statement of Undisputed Fact, Exhibit "3") This provision does not address or require refunds based on any program delays.

32.     In addition, Saba's catalog (2004-2006) also contains the following additional language:

Tuition Refund Policy

Tuition and fees shall be refunded in full, less an administrative fee of $100, and the $750 acceptance deposit, if notice of withdrawal is received prior to the first day of class. Tuition and fees shall also be refunded in full for the current enrollment period, less an administrative fee of $100 and the acceptance deposit, under the following circumstances:
- Courses cancelled by the institution
- Involuntary call to active military duty
- Documented death of the student
- Exceptional circumstances, with approval of the President or designee of the institution

11

Application fees are nonrefundable. Refunds will be calculated by the Finance Office and will be refunded within (30) days of withdrawal.

(Statement of Undisputed Fact, Exhibit "3") This provision also does not require refunds under the circumstances asserted by Mr. Demmons. This provision clearly states the four circumstances in which refunds are allowed, none of which include delays in clinical programs.[7]

33.     Indeed, any delays in Mr. Demmons' clinical programs were not caused by Saba, but were caused by Mr. Demmons himself. The timing of Mr. Demmons' clinical programs was dependent on program availability at the specific program locales requested by Mr. Demmons including programs in Shreveport, New Orleans, and Houma, Louisiana. (Statement of Undisputed Fact, ¶17 and Exhibit 1 at ¶10) Any delays experienced were caused by the fact that Mr. Demmons requested specific program locales, and such locales had limited availability and fixed start times for such clinical programs. (*Id.*)

## **RESERVATION OF RIGHTS**

34.     Saba files this summary judgment on the issues set forth herein and without waiver of any other argument or affirmative defenses, which it may present at trial or through further dispositive motion. Saba expressly does not waive its defense of prescription and the additional arguments presented in its motion to dismiss [Docket # 75], and reserves all affirmative defenses set forth in its answer to Plaintiffs' Amended Complaint [Docket # 106].

35.     Saba reserves all rights under its previously filed Motion to Withdraw Reference

---

[7] In addition, Mr. Demmons asserts, without any support, that refunds should be made after "a 45 day delay as practiced in the industry." (Statement of Undisputed Fact, Exhibit "2", Response to Interrogatory No. 15). Mr. Demmons submitted a document in the Discovery Responses entitled "Common Manual Unified Student Loan Policy" which on its face is not a document generated by Saba (and instead appears to be a document used by student loan lenders.) No portion of that document states that refunds should or must be made in a 45-day timeline.

[Docket #107], including without limitation its argument and position that the reference should be withdrawn.  This Motion for Summary Judgment is filed at this time in an abundance of caution and to the extent required by the pretrial order [Docket #115] requiring that dispositive motions be filed by no later than February 12, 2016.

## **CONCLUSION**

36.     For the reasons set forth above, Saba submits that there is no genuine issue of fact as to the claims asserted against it, and therefore Saba is entitled to judgment in its favor on all claims asserted against Saba in this case.

DATED: February 12, 2016

LOCKE LORD LLP

Respectfully Submitted,

By: */s/ C. Davin Boldissar*_____
C. Davin Boldissar (La. #29094)
Bradley C. Knapp (La. # 35867)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: 504-558-5211
Fax: (504) 681-5211

*Attorneys for R3 Education Inc., dba Saba*
*University School of Medicine*

13