## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | ' |
| | '   **CASE NO. 14-11638** |
| **WILLIAM A. DEMMONS and** | ' |
| **KAREN S. FOWLER** | ' |
| | ' |
| | '   **Chapter 7** |
| **Debtors.** | ' |

| | |
|---|---|
| **WILLIAM A. DEMMONS and** | ' |
| **KAREN S. FOWLER** | ' |
| | ' |
|     **Plaintiffs,** | ' |
| | ' |
| **vs.** | ' |
| | '   **Adversary No. 15-01024** |
| **R3 EDUCATION INC., d/b/a** | ' |
| **SABA UNIVERSITY SCHOOL OF** | ' |
| **MEDICINE; AMERICAN** | ' |
| **EDUCATIONAL SERVICES;** | ' |
| **NAVIENT SOLUTIONS, INC., AND** | ' |
| **NELNET, INC.** | ' |
| | ' |
|     **Defendants.** | ' |

### JOINT PRETRIAL ORDER

Plaintiffs William A. Demmons ("Demmons") and Karen S. Fowler ("Fowler") (collectively "Plaintiffs" or "Debtors") and Defendant R3 Education, Inc. d/b/a Saba University School of Medicine ("Saba"), Educational Credit Management Company ("ECMC"), Deutsche Bank National Trust Company ("Deutsche Bank"), and Key Bank, N.A. ("Key Bank") (collectively, the "Defendants") respectfully file Joint Pretrial Order stating as follows.

### I.     JURISDICTION

The Parties do not dispute this Court's jurisdiction over the dischargeability cause of action Plaintiffs assert against ECMC, Deutsche Bank, and Key Bank.

Saba disputes this Court's subject matter jurisdiction and constitutional authority to adjudicate Plaintiffs' claims against Saba.[1]

## II.   UNCONTESTED FACTS

### A.   Uncontested Facts Applicable to All Claims

1.   Plaintiffs Demmons and Fowler, who are husband and wife, filed their Chapter 7 case on June 25, 2014.

2.   Demmons and Fowler are residents of Louisiana and live under a community property regime.

3.   In Debtors' Bankruptcy Schedules filed on June 25, 2014, Schedule B lists no claims or causes of action as assets.

4.   ECMC, Deutsche Bank, Key Bank, and FCDB NPSL Trust 2010-1 ("FCDB") (the "Student Loan Lenders") are the owners/holders of loans incurred by Plaintiffs to pay for college and medical school.

5.   Beginning January 5, 2004, Debtors attended medical school at Saba, a for-profit medical school located in the Netherlands Antilles.

6.   Debtors received their Chapter 7 discharge on September 30, 2014.

7.   On March 12, 2015, Demmons and Fowler filed a Complaint commencing this adversary proceeding, seeking a determination that their  school loans are dischargeable. Plaintiff asserts that Saba should pay any student loan found to be nondischargeable.

8.   Currently, Demmons is a 58 year old man and Fowler is a 49 year old woman.

---

[1] *See Stern v. Marshall*, 131 S. Ct. 2594, 2611 & 2620 (2011); I*n re Frazin*, 732 F.3d 313, 319 20 (5th Cir. 2013).  In its opinion denying Saba's Motion to Withdraw the Reference, the District Court found that this Court has "related to" jurisdiction under 28 U.S.C. § 1334(b), but the District Court also recognized that any adjudication by this Court is subject to *de novo* review under *Stern*.  (*See* Doc. 139).  Notwithstanding the District Court's ruling, Saba continues to assert this Court lacks jurisdiction.

B.      **Uncontested Facts Applicable to Dischargeability Claims**

9. As of the filing of the Bankruptcy Petition, Debtors had a total of ten student loans totaling $438,686.

10. However, since the filing of the above referenced Adversary Proceeding, Stipulations have been entered approving the discharge of student loans held by Navient Solutions, Inc. ("Navient")(P-25); and Maine Educational Services ("MES") (P-113, P-116).

11. FCDB NPSL Trust ("FCDB") was issued a Summons and served with the Adversary Proceeding Complaint and First Amended Complaint on July 31, 2015 (P-60, P-61, P-66, P-67) but has failed to file an answer or other responsive pleading.  February 2, 2016, the Clerk issued an Entry of Default against FCDB, the Debtors served upon FCDB on February 3, 2016 (P-122).

12. Based upon the Stipulations entered by Navient and MES, eight loans remain at issue in this Adversary Proceeding.  Demmons has six educational loans – three with Key Bank, one with Deutsche Bank, one with FCDB and one with ECMC (Nelnet).  Fowler has two educational loans – one with Deutsche Bank and one with FCDB.

13. With the exception of the ECMC loan, all of the loans incurred by Demmons and Fowler to finance their education are private, uninsured/non-subsidized loans.

*DEMMONS STUDENT LOANS*

   **Key Bank:**

14. Of Demmons six educational loans, three loans are owned and/or held by Key Bank, all of which were incurred prior to October of 2005 (the "Key Bank Loans").

15. Demmons executed a MedAchiever Loan Graduate Loan Program

3

Application/Promissory Note in connection with the student loans held by KeyBank, N.A. on or about November 26, 2003 (the "Key Bank **Master Note**").

16. The interest rate under the Master Note is was initially variable, but the KeyBank loans have not accrued interest since June 23, 2014.17.  Interest on the Key Bank Loans began to accrue on the date that each individual loans was disbursed.

17. The total amount disbursed under the Master Note was $85,120.00, which was disbursed in three separate disbursements.

18. The first disbursement was made on February 2, 2004 in the amount of $32,370.00 (designated as Loan ending in 8001).

19. An additional disbursement was made on September 21, 2004 in the amount of $49,150.00 (designated as Loan ending in 8002).

20. Another disbursement was made on September 21, 2004 in the amount of $3,600.00 (designated as Loan ending in 8003).

21. KeyBank is the current holder of all right, title and interest in the Master Note.

22. The current balance due under the Master Note, as of March 11, 2016, was $123,679.37 broken down as follows: Loan ending in 8001, Principal Balance $47,599.41, Interest $141.37, Loan ending in 8002, Principal Balance $70,530.55, Interest $209.48, Loan ending in 8003, Principal Balance $5,183.17, Interest $15.39.

23  As of June 23, 2014, the Key Loans stopped accruing interest.

24  For the purpose of this trial, the monthly payment amount on the Key Bank loans is $243.29 per month for loan ending 8001; $360.49 per month for loan ending 8002; and $26.49 for the loan ending in 8003 (for a total monthly payment of $630.27).

25. Demmons last payment on the Key Bank Loans received on May 14, 2014.

4

**ECMC**

26. Demmons executed a FFEL consolidated note in connection with the student loan now held by ECMC on or about September 21, 2003 (the "**Note**").

27. The total amount disbursed under the Note was $37,726.08, which was disbursed on or about November 13, 2003.

28. The interest rate on the Note is 3.625%.

29. The amount disbursed under the Note was for two loans.  The original principal balance of the first loan was $19,207.46 (designated as loan number 1) and the original principal balance of the second loan was $18,519.62 (designated as loan number 2).

30. The original student lender was Wells Fargo ELT Nelnet Ed Loan Funding I (the "**Lender**"), with Tennessee Student Assistance Corporation and later College Assist designed as the guarantor and Nelnet Loan Services Inc. designated as the servicer (the "**Servicer**").

31. Upon the Debtors' bankruptcy filing, the Servicer filed a claim on behalf of the Lender with the guarantor College Assist which was paid on or about June 2, 2015, after which all right, title and interest in the Note was transferred to College Assist.

32. Upon filing the Adversary Proceeding, College Assist assigned all of its rights, title and interest in the  consolidation loans to **ECMC** on or about November 9, 2015.

33. ECMC is the current guarantor and holder of all right, title and interest in the Note.

34. The current balance due under the Note, as of March 16, 2016, was $51,955.25.

35. The monthly payment currently due by Demmons under the terms of the original ECMC Note is $263.

36. ECMC is a non-profit entity.  Therefore, the Note is guaranteed by a non-profit institution and, in turn, is reinsured by the Department of Education.

NO:1451240/00041:182892v1

**Deutsche Bank**

37. Demmons executed a Health Xpress Loan Application/Promissory Note in connection with the student loans now held by Deutsche Bank National Trust Co. on or about December 15, 2005 (the "**Deutsche Master Note**").

38. The interest rate on the Deutsche Master Note is 3.08%.

39. The total amount disbursed under the Deutsche Master Note was $46,660.00, which was disbursed in three separate disbursements.

40. Interest began to accrue under the Master Note on the date of each individual disbursement.

41. The first disbursement was made on January 19, 2006 in the amount of $15,000.00 (designated as Demmons Loan 1).

42. The second disbursement was made on May 12, 2006 in the amount of $16,130.00 (designated as Demmons Loan 2).

43. The third disbursement was made on September 7, 2006 in the amount of $15,530.00 (designated as Demmons Loan 3).

44. Deutsche Bank National Trust Co. is the current holder of all right, title and interest in the Note.

45. The current balance due under the Demmons Master Note, as of March 11, 2016, was $64,589.58 plus interest from March 3, 2014 at the contract rate of 3.08%, which by counsels' calculation totals $4,027.77 of interest, totaling $68,617.35.

46.     For the purpose of trial, the current monthly payment due by Demmons on the Deutsche Bank Student Loans is $168.48.

6

**FCDB**

47. On December 14, 2007, Demmons executed a student loan now held by FCDB in the original principle amount of $57,690. The principle balance of this student loan as of December 17, 2014, is approximately $72,443.56. Upon information and belief, the current monthly payment owed by Demmons on the FCDB student loan is $185.82.

### *DEMMONS MEDICAL ISSUES*

48. On December 14, 2010, Demmons was involved in a car accident wherein he sustained injury.

### *FOWLER LOANS*

49. Fowler incurred two student loans to finance her education at Saba.

### Deutsche Bank

50. Fowler executed a Health Xpress Loan Application/Promissory Note in connection with the student loans now held by Deutsche Bank National Trust Co. on or about December 15, 2005 (the "**Fowler Master Note**").

51. The interest rate provided by the Fowler Master Note is 3.09%.

52. The total amount disbursed under the Fowler Master Note was $31,130.00, which was disbursed in two separate disbursements.

53. Interest begins to accrue under the Fowler Master Note at the time of each individual disbursement.

54. The first disbursement was made on January 19, 2006 in the amount of $15,000.00 (designated as Fowler Loan 1).

55. The second disbursement was made on August 7, 2006 in the amount of $16,130.00 (designated as Fowler Loan 2).

7

56. Deutsche Bank National Trust Co. is the current holder of all right, title and interest in the Note.

57. The current balance due under the Fowler Master Note, as of March 11, 2016, was $40,581.89 plus interest from January 7, 2014 at the contract rate of 3.09__%, which by Counsels' calculation equals $2,727.84, totaling $43,309.73

58. For the purpose of trial, Fowler's current monthly payment due on her Deutsche Bank student loan is $252.96.

**FCDB**

59. On December 4, 2007, Fowler incurred a student loan with FCDB with an original principle balance of $38,460.00.  The current principle balance due on this loan is believed to be approximately $14,031.35 as of June 2, 2014. Upon information and belief, the current monthly payment due by Fowler on the FCDB loan is approximately $97.28.

***FOWLER MEDICAL CONDITION***

60. Fowler has autoimmune hematologic abnormalities, resulting in substantial female health issues.

61. Fowler did not pass the Step One Exam. Fowler could not participate in Saba's clinical program and therefore, did not graduate from medical school.

***DEMMONS AND FOWLER CURRENT INCOME AND EXPENSES***

62.  The outstanding balance due on Debtors' eight remaining student loans total at least $367,280.65.[2]

---

[2] Key Bank loan balance $123,679.37 plus ECMC balance of $51,955.25 plus Deutsche Demmons Loan of at least $64,589.58; plus Demmons FCDB loan of at least $72,443,56 (as of December 7, 2014); plus Fowler Deutsche loan of at least $40,581.89; plus Fowler FDCB loan of at least $14,031 (as of December 7, 2014).

(continued...)

NO:1451240/00041:182892v1

63.   The total monthly payments due by Debtors under the terms of their original student loan contracts is $___.[34]

64. Demmons has been unsuccessful in his attempts to "match" in order to procure a medical residency.  As such, despite having graduated from medical school, Demmons cannot be a licensed physician or practice medicine in the United States.

65.   Demmons is currently employed as an "ED Tech" earning $12.25 per hour.

66.   Fowler is employed in the field of durable medical equipment, wherein she is involved in shipping incontinence supplies.

67.   Fowler earns $10.30 per hour from her employment.

68.   Assuming a 40 hour week, Debtors gross monthly salary from employment totals $3,608.00.

69.  In June, 2014, the debtors' Schedule I showed total net income of $2,562.79, which included net income of $1,224.28 attributable to Demmons.

70. In June, 2014, the debtors' Schedule J showed total monthly expenses of $2,524.59.

71. Through discovery issued in November 2015, Demmons and Fowler admitted that

_____

(continued...)

---

[3] Math calculation

[4] On April 1, 2016, ECMC offered to reduce Demmons payments under its student loan under two separate options.  The first option, income based repayment option (IBR), would allow Demmons to make payments of  $78 per month for 25 years and, after that time, the balance under the loan would then be discharged (because Demmons works for a clinic that is designated as a  501(c)(3), his payment obligation under this option would last only for 10 years and then the balance would be discharged).  The second option, REPAYE under the Ford program , would allow Demmons to make payments of  $52 per month for 25 years and, after that time, the balance under the loan would then be discharge (because Demmons works for a clinic that is designated as a 501(c)(3), his payment obligation under this option would last only for 10 years and then the balance would be discharged).

NO:1451240/00041:182892v1

their  total monthly expenses are $2,234.67 per month, which is approximately $289.92 less than was stated in their  prior bankruptcy schedules.

74. The expenses reflected by Debtors on their Schedule J are less than the amount set forth by the IRS for allowable living expenses for a household size of two, as to home maintenance, food and clothing.

75.  The expenses reflected by Debtors on their Schedule J evidence the payment of no car note and they have no currently functioning vehicle.

76.  The Debtors have no health insurance and will owe a fine when Debtors file their 2015 taxes for failing to maintain health insurance.

### C.    Uncontested Facts Related to Saba Claims

77. Saba's curriculum generally consisted of two parts: first, a "Basic Sciences" component consisting of five semesters of classroom work, followed by, second, a "Clinical Medicine" program comprised of 72 weeks. The USMLE Step 1 examination is the first of a three-step examination required for medical licensure in the United States.

78.    Both Mr. Demmons and Ms. Fowler successfully completed their "Basic Sciences" coursework in 2006.

79.    In August, 2006, Demmons and Fowler returned to the United States.

*DEMMONS*

80.    Demmons successfully passed the USMLE Step 1 Examination on October 31, 2007.

81.    Demmons took part in clinical programs during his semesters 6-10 at Saba,

10

beginning in December, 2007 and continuing through May, 2010, when he graduated with a Doctor of Medicine degree.

***FOWLER***

82.     Prior to her 5th semester, Fowler paid Saba's tuition and fees, as well as her living expenses, out of pocket and had no student loan debt.

83.     Fowler originally applied for a student loan in January 2006 and was loaned $31,130 from Student Loan Express, which note is now owned by Deutsche ("Fowler Student Loan #1").

84.     On January 19, 2006, $15,000 was disbursed to Saba. On January 20, 2006, at Fowler's request and direction, Saba wired $14,975 to Fowler, which she used to cover her living expenses for Semester 5. Wire transfers are subject to a $25 wire fee.

85.     This loan balance was submitted directly by Deutsche directly to Saba, which in turn, sent $14,975 to Fowler to cover her living expenses for Semester 5. The remaining loan balance of $16,130 was retained by Saba.

86.     In November, 2007, Fowler entered into a second student loan, now owned by FDCB, in the amount of $38,460 (the "Fowler Student Loan #2").

87.     The Fowler Student Loan #2 proceeds of $38,460, were disbursed directly by the lender to Saba. From these proceeds, Saba withheld tuition and fees of $17,260 for Semester 7 and $9,190 for Semester 8.

88.     Saba subsequently disbursed the remaining $21, 200 to Fowler to cover living expenses associated with Semesters 7 and 8.

11

89.     Fowler borrowed student loans totaling  $69,590, of which $26,085 was paid to Saba for tuition and fees covering semesters 6 (Fall of 2006), 7 (Fall of 2007), and 8 (Spring of 2008).

90.     Fowler attempted and failed the USMLE Step 1 Exam on three separate occasions between 2007 and 2009.

91.     Fowler was academically dismissed from Saba effective June 9, 2009 for failure to progress.

92.     From total tuition and fees retained by Saba of $26,085, Saba sent to Great Lakes, the originating student loan lender, a check in the amount of $25,210, dated June 9, 2009. This check constituted a refund of the majority of tuition and fees borrowed by Fowler covering semesters 6 (Fall of 2006), 7 (Fall of 2007), and 8 (Spring of 2008).

93.     The notation contained on the Saba refund check directed Great Lakes to credit the refund to the FCDB Student Loan.

## III.    CONTESTED FACTS

### As To Dischargeabilitiy

1.  Debtors cannot maintain a minimal standard of living if forced to repay the student loans.

2.  Debtors income will not increase in the foreseeable future.

3.  Demmons attempted to make only three (3) payments on the ECMC Student Loan. However, two (2) payments were returned for insufficient funds, so only one (1) payment was actually applied to the Note.

4.  Whether Debtors' current condition may change in the reasonably foreseeable future.

5.  What actions Debtors took that would constitute good faith effort to pay.

12

**As to Saba Litigation:**

1.   Whether Fowler was appropriately classified by Saba as a student in the clinical medicine program while simultaneously being denied access to the clinical education program.

2.   Whether Saba has a written policy requiring students to pass the Step One Examination prior to their participation in the clinical medicine program.

3.   Was Fowler treated differently than other students

4.   Did Saba accurately calculated the amount of the Tuition Refund sent to Great Lakes and whether Saba had an obligation to refund the tuition and fees to the correct loan from which the proceeds were disbursed.

5.   Whether Saba had any obligation—contractual or otherwise—to refund or disburse any student loan amounts to either Demmons or Fowler within any timeframe.

6.   Saba applied the proceeds remitted from Demmons' Student Loan at or around the time such student loan proceeds were disbursed to Saba..

7.   Saba prepaid itself tuition and fees from Demmons Student Loans, prior to the date that such tuition and fees were due.  Saba withheld student loan proceeds to pay itself 455 days in advance of Semester 6; 146 days in advance of Semester 7; 199 days in advance of Semester 8, 229 days in advance of Semester 9; and 152 days in advance of Semester 10.

8.   .Demmons derived no reciprocal benefit from Saba for his prepayment of tuition and fees.

9.   On August 7, 2006, Student Loan Express disbursed $16,130 to Saba.  Saba applied $8, 550.00 toward tuition, $250.00 toward a bachelor of science degree fee, and applied $25 to a wire fee associated with wiring the remaining $7,305 to Fowler for living expenses.

10.  In the Fall of 2006, Saba disbursed the remaining proceeds of the Deutsche

NO:1451240/00041:182892v1

Student Loan by paying itself $8,825 in tuition and fees for Semester 6 and sending Fowler the remaining balance of $7,305 for living expenses

11. Saba charged Fowler for Malpractice Liability Insurance as part of her Semester 6 Clinical Medicine tuition.  Only students participating in the Clinical Medicine program are required to maintain malpractice liability insurance.

12. Ms. Fowler was ineligible to participate in Saba's clinical programs for Semesters 6, 7 and 8.

13. Ms. Fowler was prohibited from participating in Saba's clinical programs for Semesters 6, 7 and 8.

14. Between Fall of 2006 and the Spring of 2009, no benefits were received by Fowler from Saba in exchange for her payment of Saba's tuition and fees for Semesters 6, 7 and 8.

15. The Great Lakes check cleared Saba's bank account in July 2009.

16. Great Lakes did not receive the Saba refund check until November, 2009.

## IV.   ISSUES OF LAW

**A.   Issues of Law for Dischargeability Claims**

1. Whether the Debtors  have demonstrated the factors required under the *Brunner* test to be eligible for an undue hardship discharge from their  student loans held by the Student Loan Lenders.

2. Whether the three Demmons pre-October 2005 loans[5] held by Key Bank are dischargeable as the loans are private loans that were not made, insured or guaranteed by

---

[5] Consisting of the three Key Bank Loans

14

a government unit or made under any program funded in whole or in part by a governmental unit or nonprofit organization.

3.   Whether the Key Bank Loans made prior to October 2005 should be subject to the pre-BAPCPA dischargeability provisions for private student loans.

4.   Whether the Key Bank Loans, Deutsche Bank Loans, and FCDB Loans are dischargeable because the amount of the loans exceeded Saba's applicable Cost of Attendance.

5.   Whether current law, or the pre-BAPCPA law in effect when the loans were made, would apply.

**B.     Issues of Law for Saba Claims**

**By the Plaintiffs:**

1.   Whether Saba had a duty to appropriately apply Debtors student loan proceeds.

2.   Whether Debtors were damaged by Saba's failure to perform its duty to appropriately apply the student loan proceeds.

3.   Whether Saba is liable for breach of contract in its handling of the application of student loan proceeds, which were not yet contractually due to Saba.

4. Whether and to what extent Debtors have been damaged by Saba's breach of contract.

**By the Defendant Saba:**

5. Whether Plaintiffs are barred by judicial estoppel from asserting claims against Saba due to their failure to schedule any causes of action as assets in their bankruptcy case.[6]

---

[6] *See Reed v. City of Arlington*, 650 F.3d 571, 574-77 (5th Cir. 2011); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335-36 (5th Cir. 2004); (Doc. 139 at 9 n. 1).

NO:1451240/00041:182892v1

6. Whether Plaintiffs' tort claims are barred under either Louisiana's one-year prescriptive period or the five-year prescriptive period under Dutch law when tort claims alleged by Fowler occurred prior to or concurrently with her dismissal from Saba in June 2009.[7]

7. Whether Plaintiffs' breach of contact claims are prescribed under the five-year limitations period established under Dutch law.[8]

8. If Plaintiffs' breach of contract claims are not prescribed, whether Plaintiffs can demonstrate the elements for a breach of contract claim, which requires, at a minimum, proof of an obligation to perform, breach of the obligation, and damages. [9]

## V.    WITNESS LIST

**A.    Witnesses for April 12 Dischargeability Trial**

**On Behalf of Plaintiffs Demmons and Fowler:**

1. William Demmons

2. Karen Fowler

3. Dr. Kaye

4. Any witness listed by any other party

5. Any rebuttal witness

---

[7] *See* La. C.C. Art. 3492; *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1164 (11th Cir. 2009).

[8] *See* Dutch Civil Code Art. 3.307-3.309.

[9] *E.g., F.H. Paschen, S.N. Nielsen & Associates, LLC v. Southeastern Commercial Masonry, Inc.*, Case No. 12-2799 2015 WL 7015389 *2 (E.D.La. Nov. 10, 2015).

16

**On Behalf of Defendants**

Witnesses for ECMC:

    1.      William A. Demmons, will call

    2.      Karen Fowler, may call

    3.      Any witness listed by any other party, may call

    4.      Any rebuttal or impeachment witness, may call

Witnesses for Deutsche Bank National Trust Co. :

1. William A. Demmons, will call

2. Karen S. Fowler, will call

3. Any of the other parties witnesses for rebuttal or impeachment or direct testimony, may call

Witnesses for KeyBank:

1. William A. Demmons, will call

2. Karen Fowler, will call

3. Any of the parties' witnesses for rebuttal or impeachment or direct testimony, may call

**B.**      **Witnesses for April 13 Saba Trial**

**On Behalf of Plaintiffs Demmons and Fowler:**

1. William A. Demmons, will call

2. Karen Fowler, will call

3. Dr. Jayanthini Nadarajah, previous Saba Student, may call

4. Any witness listed by any other party

5.  Any rebuttal witness

**On Behalf of Saba:**

1.      William A. Demmons, Will Call

2.      Karen S. Fowler, Will Call

3.      Terry J. Moya, Chief Financial Officer, Saba, Will Call

## VI.    EXHIBIT LIST

\* The exhibit list will be finalized and provided to the court on the morning of trial.

### A.      Exhibit List for April 12 Dischargeability Trial

**On Behalf of Plaintiff Debtors:**

1. Bankruptcy Schedules

**2.** Paystubs

3.  Applicable expenses

4.  Chart of Allowable expenses by US Trustee, Chapter 13 Trustee and Bankruptcy Code

5.  Means Test for Family of Two

6.  Cost of Attendance at Saba

7.  Comparison of Cost of Attendance and Student Loan Proceeds Distributed.

8.  Demmons Medical Records produced in Discovery

9.  Medical Records of Demmons

Plaintiffs reserve the right to introduce rebuttal evidence during the trial to impeach and/or rebut

any testimony given at trial.

### On Behalf of ECMC:

1.  The Note

2.  The payment history on the Note by Demmons

18

Case 15-01024 Doc 140 Filed 04/05/16 Entered 04/05/16 20:05:51 Main Document   Page 19 of 27


3. All correspondence regarding any deferment of the payments due under the Note

4. The April 1, 2016, letter sent by counsel for ECMC to counsel for Demmons regarding options available for Demmons to repay his student loans

5. Demmons' bankruptcy petition, including Schedule I and J

6. Demmons' 2013 and 2014 tax returns and W-2s from 2015.

7. Demmons' responses to discovery propounded by ECMC

8. Any documents filed within the Adversary Proceeding or the underlying bankruptcy case.

ECMC reserves the right to introduce rebuttal evidence during the trial to impeach and/or rebut any testimony given at trial.

### On Behalf of Deutsche Bank National Trust Co.

1. The Demmons Master Note

2. The Fowler Master Note

3. The payment history on the Demmons Master Note by Demmons

4. The payment history on the Fowler Master Note by Fowler

5. All correspondence regarding any deferment of the payments due under the Notes

6. Demmons/Fowler bankruptcy petition, including Schedule I and J

7. Demmons/Fowler 2013 and 2014 tax returns

8. Demmons/Fowler's responses to discovery propounded by Deutsche Bank National Trust Co.

9. Any documents filed in the within case or in the underlying bankruptcy case.

19


NO:1451240/00041:182892v1

Deutsche Bank National Trust Co. reserves the right to introduce rebuttal evidence during the trial to impeach and/or rebut any testimony given at trial.  Deutsche may use any document listed herein, or any document received from or provided to Plaintiffs during the litigation, for this purpose.

**On Behalf of Key Bank:**

1.  The Master Note

2.  The payment history on the Master Note by Demmons

3.  All correspondence regarding any deferment of the payments due under the Note

4.  Demmons' bankruptcy petition, including Schedule I and J

5.  Demmons' 2013 and 2014 tax returns

6.  Demmons' responses to discovery propounded by KeyBank

7.  Demmons' bank statements

8.  Demmons' credit account statements

9.  Any documents filed in the within case or in the underlying bankruptcy case.

KeyBank reserves the right to introduce rebuttal evidence during the trial to impeach and/or rebut any testimony given at trial.  Kay Bank may use any document listed herein, or any document received from or provided to Plaintiffs during the litigation, for this purpose.

**B.     Exhibit List for April 13 Saba Trial**

**On Behalf of Plaintiffs:**

1. Saba Semester 6 Clinical Medicine Tuition Statement dated 7/15/2006.

2. Bursar Rosa email to Debtor dated January, 2015.

3.  Janet Baczewski email to Debtor dated March 7, 2006 re part time status

4. Janet Baczewski email to Debtor regarding tuition for Semesters 7 and 8.

5.  Saba Admission letter to Fowler dated July 25, 2003.

5. Saba Tuition Payment Policies (pages 34-35)

6.  Saba refund letter to Great Lakes dated July 17, 2009

7.  Saba Statement to Fowler dated 11/30/2014

8.  The following are Exhibits from Saba's document production and are identified by Saba

Bates Number. (These are labled as Saba000143, etc. in the Saba PDF)

143. Demmons ECFMG cert. shows dates passing steps

283. Photocopy of Reimbursement Check #4878 for **$25,210 in one lump sum** to Great Lakes

285-286. Fowler Letter of Appeal to Eliastam, October 27, 2008

287-290. Fowler Dear Promotions Committee Members, April 24, 2008

315. May 19, 2008 Letter from Eliastam and Maron, regarding 2nd attempt, suspend dismissal but will uphold dismissal if Step 1 not passed by August 19, 2008.

317. September 29, 2008, Eliastam and Maron Letter "you are hereby dismissed."

318. October 30, 2008, Maron Letter, "have reviewed your **basic sciences grades and GPA**" (incorrectly calculated)

319. LOA that Sandy Murphy **forced everyone to sign** on the island.

320. LOA that Noella Burks **required us to post date. (See Email from Burks)**

321. LOA **required** by Sandy Murphy

322. **LOA faxed from Lake End Park on 1/31/2008 and post-dated signature of Aug 31, 2007** for Sept 1, 2008-Dec 1, 2008 as **required by Sandy Murphy**

323. **LOA faxed from Lake End Park on 1/31/2008 and post-dated signature of Nov 30, 2007** for Dec 1, 2008-April 30, 2008 as **required by Sandy Murphy**

324**. Fax Cover Sheet from Lake End Park indicating that Murphy required post-dated LOA's.**

325. LOA that Noella Burks **required us to post date**. **(See Email from Burks)**

326.   Student Loan Xpress Disbursement, 8/9/6, Loan Period: Sept 2006, $16,130, $8,825, $7,305

327.  Disbursement Report, $16,130

21

328.   ScholarNet Loan Maintenance, shows 3 scheduled disbursements

329.   ScholarNet Edit Loan, p 1 of 3, 3/27/06 Janet, Grade Level: **3rd year Graduate (still considered 2nd year, still on island, still in basic sciences)**

330.   ScholarNet Edit Loan, p 2 of 3, **JB edit 2nd disb from 5/12/6 to 8/7/6, 3rd to Nov. 2006 (didn't get)**

331.   ScholarNet Edit Loan, p 3 of 3, ScholarNet-Loan Maintenance: Karen S. Fowler

332.   Screenshot, **8/9/6, Tuition, Receivables, $8825.00, Loan Payment**, (**Never returned to Deutsche by Saba**)

333.   General Journal Entry, $8,550 + 250 + 25 = $8825, on 7/15/6, 7/21/6, 8/8/6

334.   **$7,305 Loan Disbursement**, Fowler, Karen S. on 8/9/6 (**2nd and final from Deutsche**)

335.   Stud Loan Xpress Disburs, 12/5/7, Sept07 & Jan08, $38, 460, $17,260 Sem 7 & 8, Check 5213, 12/5/7, $21,200

336.   Disbursement Roster Report

337.   ScholarNet for Loan #2: GRTLKSORIGASNUGYC, pending processing, 11/27/2007

338.   ScholarNet for Loan #2: GRTLKSORIGASNUGYC, pending processing, 11/9/2007

339.   Guaranteed Loan Response Report for GRTLKSORIGASNUGYC ($97,000 for the school that day)

340.   ScholarNet 11/8/7 p.1of3, **school certify loan amt, confirm full time enroll, COE, Grade Level, date**

341.   ScolarNet p.2 of 3, again see School section for **certification**

342.   ScholarNet p. 3 of 3, Application Status: Certifcation Needed

343.   Certification Request Report, not legible, for –GYC loan

344.   Stud Loan Xpress Disb, 1/20/06 CLUID: GRTLKSORIGA0V7YH6(1of3) $14,975 to FNBOIC

345.   Disbursement Roster Report

346.   ScholarNet Search Results, shows **approval 3 Disbursements, No Holds**, – V7YH6 Loan Sequence 1

347.   Guaranteed Loan Responsive Request, NOT LEGIBLE

348.   Karen's Health Xpress Loan Application/Promissory Note, **School Certification by Janet Baczewski**

349.   StudentLoanXpress, Health Xpress Loan Pre-Screen Results, p 1 of 2

22

350.  p 2 of 2, Credit: Pass

351.    ScholarNet Search on 11/28/2005, phase: credit approved, Lender: 833890, Guarantor: 755

352.    Page 2 of 3, **Process Type: School certification, shows solid boxes where school certified. 3rd yr**

353.  Page 3 of 3, Schools have Edit, Guarantee, Save, Cancel

355.  NetSuite (R3), Transaction Search showing check for $25,210.00

356.  6/9/9 Credit Memo shows $100 admin fee and $750 N/R seat deposit

357.    **PAID Invoice #142816, 6th Semester Tuition $7950, Malpractice $600, Unphotoshopped Version**

358.  **PAID Invoice #146551, 7th Semester, Balance due 8/15/2008**

359.  **PAID Invoice #148108, 8th Semester, Balance due 12/15/2008**

360.  July 17, 2009, **Letter to Great Lakes, incorrectly ID's refund as being from ONE loan, disbursed 12/4/7,** no longer needs, been withdrawn as of 6/9/9.

362.  Registrar Notes, **Steven Rodger corrected transcript**.


Debtors reserve the right to introduce rebuttal exhibits at the time of trial to impeach or rebut trial testimony. Debtors also reserve the right to introduce any exhibits designated by any other party.


**On Behalf of Saba:**

1.    Plaintiffs' Schedules and Statement of Financial Affairs (Doc. 1)

2.    June 9, 2009 Refund Check in the amount of $25,210.00 issued by Saba to Great Lakes

3.    Tuition Refund Excerpt from 2004-2006 Saba Catalog

4.    2004 – 2006 Saba Catalog

5.    2007-2009 Saba Catalog

6.    William Demmons Saba Account Summary

23

7.      William Demmons Loan Disbursement Summary

8.      Karen Fowler Saba Account Summary

9.      Karen Fowler Loan Disbursement Summary

10.     Karen Fowler Transcript

11.     William Demmons Transcript

12.     Karen Fowler Health Xpress Loan Application

13.     Karen Fowler ScholarNet Loan Information Summaries

14.     Demmons-Fowler Guaranteed Loans Response Report

15.     Demmons-Fowler Loan Disbursement Reports

16.     Saba Wire Disbursement Records

17.     Karen Fowler Health Xpress Pre-Screen Results

18.     Karen Fowler ScholarNet Screens

19.     January 20, 2006 Tuition Statement

20.     February 16, 2006 Tuition Statement

21.     July 15, 2006 Tuition Invoice

22.     August 9, 2006 Tuition Statement

23.     Student Loan Xpress Disbursement Letter dated January 20, 2006

24.     Student Loan Xpress Disbursement Letter dated August 9, 2006

25.     July 15, 2007 Tuition Invoice

26.     November 15, 2007 Tuition Invoice

27.     Student Loan Xpress Disbursement Letter dated December 5, 2007

28.     Saba Reconciliation Detail December 31, 2007

29.     October 31, 2007 Fowler USMLE Results

30.     January 31, 2008 Letter from Saba to Fowler regarding USMLE

31.     March 31, 2008 Fowler USMLE Results

32.     Karen Fowler April 24, 2008 Letter and Email to Promotions Committee

33.     Karen Fowler Falcon Registration

34.     May 19, 2008 Letter Regarding USMLE Attempts

35.     September 29, 2008 Dismissal Letter

36.     Karen Fowler October 27, 2008 Letter and Email to Dr. Eliastam Appealing Dismissal

37.     October 30, 2008 Letter Allowing Additional USMLE Attempt

38.     June 9, 2009 Dismissal Letter

39.     Saba Bank Statement Period Ending July 31, 2009

40.     Karen Fowler Leave of Absence Forms

41.     William Demmons Leave of Absence Forms

42.     William Demmons Tuition Statements and Invoices

43.     William Demmons Loan Disbursement Records

44.     William Demmons MedAchiever Loan Application

45.     William Demmons Chabert Medical Center Record

Saba reserves the right to introduce rebuttal exhibits at the time of trial to impeach or rebut trial testimony.  Saba also reserves the right to introduce any exhibits designated by any other party.

DATED: April 5, 2016

25

Respectfully Submitted,

By: */s/ Robin R. De Leo*
Robin R De Leo (La. #20347)
The De Leo Law Firm
800 Ramon St.
Mandeville, Louisiana 70448
Telephone: 985-727-1664
Fax: 985-727-4388

*Attorneys for Debtors/Plaintiffs*


By:_____
C. Davin Boldissar (La. #29094)
Bradley C. Knapp (La. # 35867)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: 504-558-5211
Fax: (504) 681-5211

*Attorneys for R3 Education Inc., dba Saba
University School of Medicine*

By:_____
Heather LaSalle Alexis
McGlinchey Stafford
601 Poydras St STE 1200
New Orleans, LA 70130
Telephone: 504-596-0395
Fax: 504-324-0749

*Attorney for ECMC*



 By:_____
Joseph M McCandlish
Weltman,Weinberg & Reis Co., L.P.A.
Regional Counsel
3705 Marlane Drive
Grove City, OH 43123
Telephone: 614-801-2619
Fax: 614-801-2601

26

*Attorney for Deutsche Bank and Key Bank*


By:_____
Earl F. Sundmaker
The Sundmaker Firm
Local Counsel
1027 Ninth St
New Orleans, LA 70115
Telephone: 504-568-0515
Fax: 504-568-0519

*Attorney for Deutsche Bank and Key Bank*

27