UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | ' |
| | '   **CASE NO. 14-11638** |
| **WILLIAM A. DEMMONS and** | ' |
| **KAREN S. FOWLER** | ' |
| | ' |
| | '   **Chapter 7** |
| **Debtors.** | ' |

| | |
|---|---|
| **WILLIAM A. DEMMONS and** | ' |
| **KAREN S. FOWLER** | ' |
| | ' |
|     **Plaintiffs,** | ' |
| | ' |
| **vs.** | ' |
| | '   **Adversary No. 15-01024** |
| **R3 EDUCATION INC., d/b/a** | ' |
| **SABA UNIVERSITY SCHOOL OF** | ' |
| **MEDICINE; AMERICAN** | ' |
| **EDUCATIONAL SERVICES;** | ' |
| **NAVIENT SOLUTIONS, INC., AND** | ' |
| **NELNET, INC.** | ' |
| | ' |
|     **Defendants.** | ' |

## JOINT PRETRIAL ORDER

Plaintiffs William A. Demmons ("Demmons") and Karen S. Fowler ("Fowler") (collectively "Plaintiffs" or "Debtors") and Defendant R3 Education, Inc. d/b/a Saba University School of Medicine ("Saba"), Educational Credit Management Corporation ("ECMC"), Deutsche Bank National Trust Company ("Deutsche Bank"), and Key Bank, N.A. ("Key Bank") (collectively, the "Defendants") respectfully file this Joint Pretrial Order stating as follows.

## I.    JURISDICTION

The Parties do not dispute this Court's jurisdiction over the dischargeability cause of action Plaintiffs assert against ECMC, Deutsche Bank, and Key Bank.

1

Saba disputes this Court's subject matter jurisdiction and constitutional authority to adjudicate Plaintiffs' claims against Saba.[1]

## II.  UNCONTESTED FACTS

**A.  Uncontested Facts Applicable to All Claims**

1.  Plaintiffs Demmons and Fowler, who are husband and wife, filed their Chapter 7 case on June 25, 2014.

2.  Demmons and Fowler are residents of Louisiana and live under a community property regime.

3.  In Debtors' Bankruptcy Schedules filed on June 25, 2014, Schedule B lists no claims or causes of action as assets.

4.  ECMC, Deutsche Bank, Key Bank, and FCDB NPSL Trust 2010-1 ("FCDB") (ECMC, Deutsche Bank, Key Bank and FCDB are collectively referred to as the "Student Loan Lenders") are the owners/holders of loans incurred by Plaintiffs to pay for college and medical school.

5.  Beginning January 5, 2004, Debtors attended medical school at Saba, a for-profit medical school located in the Netherlands Antilles.

6.  Debtors received their Chapter 7 discharge on September 30, 2014.

7.  On March 12, 2015, Demmons and Fowler filed a Complaint commencing this adversary proceeding, seeking a determination that their  school loans are dischargeable. Plaintiff asserts that Saba should pay any student loan found to be nondischargeable.

---

[1] *See Stern v. Marshall*, 131 S. Ct. 2594, 2611 & 2620 (2011); I*n re Frazin*, 732 F.3d 313, 319 20 (5th Cir. 2013).  In its opinion denying Saba's Motion to Withdraw the Reference, the District Court found that this Court has "related to" jurisdiction under 28 U.S.C. § 1334(b), but the District Court also recognized that any adjudication by this Court is subject to *de novo* review under *Stern*.  (*See* Doc. 139).  Notwithstanding the District Court's ruling, Saba continues to assert this Court lacks jurisdiction.

NO:1451240/00041:182892v1

8.      Currently, Demmons is a 58 year old man and Fowler is a 49 year old woman.

**B.      Uncontested Facts Applicable to Dischargeability Claims**

9. As of the filing of the Bankruptcy Petition, Debtors had a total of ten student loans totaling $438,686.

10. However, since the filing of the above Adversary Proceeding, Stipulations have been entered approving the discharge of student loans held by Navient Solutions, Inc. ("Navient") (P-25); and Maine Educational Services ("MES") (P-113, P-116).

11.  FCDB NPSL Trust ("FCDB") was issued a Summons and served with the Adversary Proceeding Complaint and First Amended Complaint on July 31, 2015 (P-60, P-61, P-66, P-67) but has failed to file an answer or other responsive pleading. February 2, 2016, the Clerk issued an Entry of Default against FCDB, the Debtors served upon FCDB on February 3, 2016 (P-122).

12.  Based upon the Stipulations entered by Navient and MES, eight loans remain at issue in this Adversary Proceeding.  Demmons has six educational loans – three with Key Bank, one with Deutsche Bank, one with FCDB and one with ECMC (Nelnet).  Fowler has two educational loans – one with Deutsche Bank and one with FCDB.

13. With the exception of the ECMC loan, all of the loans incurred by Demmons and Fowler to finance their education are private, uninsured/non-subsidized loans.

*DEMMONS STUDENT LOANS*

**Key Bank:**

14. Of Demmons' six educational loans, three loans are owned and/or held by Key Bank, all of which were incurred prior to October of 2005 (the "Key Bank Loans").

15. Demmons executed a MedAchiever Loan Graduate Loan Program Application/Promissory Note in connection with the student loans held by KeyBank, N.A. on or about November 26, 2003 (the "Key Bank **Master Note**").

16. The interest rate under the Master Note is was initially variable, but the KeyBank loans have not accrued interest since June 23, 2014.17.  Interest on the Key Bank Loans began to accrue on the date that each individual loans was disbursed.

17. The total amount disbursed under the Master Note was $85,120.00, which was disbursed in three separate disbursements.

18. The first disbursement was made on February 2, 2004 in the amount of $32,370.00 (designated as Loan ending in 8001).

19. An additional disbursement was made on September 21, 2004 in the amount of $49,150.00 (designated as Loan ending in 8002).

20.  Another disbursement was made on September 21, 2004 in the amount of $3,600.00 (designated as Loan ending in 8003).

21. KeyBank is the current holder of all right, title and interest in the Master Note.

22.  The current balance due under the Master Note, as of March 11, 2016, was $123,679.37 broken down as follows: Loan ending in 8001, Principal Balance $47,599.41, Interest $141.37, Loan ending in 8002, Principal Balance $70,530.55, Interest $209.48, Loan ending in 8003, Principal Balance $5,183.17, Interest $15.39.

23. As of June 23, 2014, the Key Bank Loans stopped accruing interest.

24.  For the purpose of this trial, the monthly payment amount on the Key Bank Loans is $243.29 per month for loan ending 8001; $360.49 per month for loan ending 8002; and $26.49 for the loan ending 8003 (for a total monthly payment of $630.27).

4

25. Demmons last payment on the Key Bank Loans received on May 14, 2014.

**ECMC**

26. Demmons executed a FFEL consolidated note in connection with the student loan now held by ECMC on or about September 21, 2003 (the "**Note**").

27. The total amount disbursed under the Note was $37,726.08, which was disbursed on or about November 13, 2003.

28. The interest rate on the Note is 3.625%.

29. The amount disbursed under the Note was for two loans. The original principal balance of the first loan was $19,207.46 (designated as loan number 1) and the original principal balance of the second loan was $18,519.62 (designated as loan number 2).

30. The original student lender was Wells Fargo ELT Nelnet Ed Loan Funding I (the "**Lender**"), with Tennessee Student Assistance Corporation and later College Assist designed as the guarantor and Nelnet Loan Services Inc. designated as the servicer (the "**Servicer**").

31. Upon the Debtors' bankruptcy filing, the Servicer filed a claim on behalf of the Lender with the guarantor College Assist which was paid on or about June 2, 2015, after which all right, title and interest in the Note was transferred to College Assist.

32. Upon filing the Adversary Proceeding, College Assist assigned all of its rights, title and interest in the consolidation loans to ECMC on or about November 9, 2015.

33. ECMC is the current guarantor and holder of all right, title and interest in the Note.

34. The current balance due under the Note, as of March 16, 2016, was $51,955.25.

35. The monthly payment currently due by Demmons under the terms of the original ECMC Note is $263.

36. ECMC is a non-profit entity.   Therefore, the Note is guaranteed by a non-profit institution and, in turn, is reinsured by the Department of Education.

37. On April 1, 2016, ECMC offered to reduce Demmons' payments for his student loans held by ECMC through two separate options.  The first option, income based repayment (IBR), would allow Demmons to make payments of $78 per month for 25 years and, after that time, the balance of the loan would be discharged.  The second option, REPAYE under the Ford Program, would allow Demmons to make payments of $52 per month for 25 years and, after that time, the balance of the loan would be discharged.  Because Demmons works for a clinic designated as a 501(c)(3), his payment term under both options could be limited to 10 years after which time the loan balance would be discharged.

### Deutsche Bank

38. Demmons executed a Health Xpress Loan Application/Promissory Note in connection with the student loans now held by Deutsche Bank National Trust Co. on or about December 15, 2005 (the "**Deutsche Master Note**").

39. The interest rate on the Deutsche Master Note is 3.08%.

40. The total amount disbursed under the Deutsche Master Note was $46,660.00, which was disbursed in three separate disbursements.

41. Interest began to accrue under the Master Note on the date of each individual disbursement.

42. The first disbursement was made on January 19, 2006 in the amount of $15,000.00 (designated as Demmons Loan 1).

43. The second disbursement was made on May 12, 2006 in the amount of $16,130.00

6

(designated as Demmons Loan 2).

44. The third disbursement was made on September 7, 2006 in the amount of $15,530.00 (designated as Demmons Loan 3).

45. Deutsche Bank National Trust Co. is the current holder of all right, title and interest in the Note.

46. The current balance due under the Demmons Master Note, as of March 11, 2016, was $64,589.58 plus interest from March 3, 2014 at the contract rate of 3.08%, which by counsels' calculation totals $4,027.77 of interest, totaling $68,617.35.

47.    For the purpose of trial, the current monthly payment due by Demmons on the Deutsche Bank Student Loans is $168.48.


**FCDB**

48. On December 14, 2007, Demmons executed a student loan now held by FCDB in the original principal amount of $57,690.  The principal balance of this student loan as of December 17, 2014, is approximately $72,443.56.   Upon information and belief, the current monthly payment owed by Demmons on the FCDB student loan is $185.82.


### *DEMMONS MEDICAL ISSUES*

49. On December 14, 2010, Demmons was involved in a car accident wherein he sustained  injury.

### *FOWLER LOANS*

50.    Fowler incurred two student loans to finance her education at Saba.


7

**Deutsche Bank**

51.  Fowler executed a Health Xpress Loan Application/Promissory Note in connection with the student loans now held by Deutsche Bank National Trust Co. on or about December 15, 2005 (the "**Fowler Master Note**").

52.  The interest rate provided by the Fowler Master Note is 3.09%.

53.   The total amount disbursed under the Fowler Master Note was $31,130.00, which was disbursed in two separate disbursements.

54. Interest begins to accrue under the Fowler Master Note at the time of each individual disbursement.

55. The first disbursement was made on January 19, 2006 in the amount of $15,000.00 (designated as Fowler Loan 1).

56. The second disbursement was made on August 7, 2006 in the amount of $16,130.00 (designated as Fowler Loan 2).

57. Deutsche Bank National Trust Co. is the current holder of all right, title and interest in the Note.

58. The current balance due under the Fowler Master Note, as of March 11, 2016, was $40,581.89 plus interest from January 7, 2014 at the contract rate of 3.09__%, which by Counsels' calculation equals $2,727.84, totaling $43,309.73

59. For the purpose of trial, Fowler's current monthly payment due on her Deutsche Bank student loan is $252.96.

**FCDB**

60. On December 4, 2007, Fowler incurred a student loan with FCDB with an original principal balance of $38,460.00.  The current principal balance due on this loan is believed to be

approximately $14,031.35 as of June 2, 2014. Upon information and belief, the current monthly payment due by Fowler on the FCDB loan is approximately $97.28.

***FOWLER MEDICAL CONDITION***

61. Fowler has autoimmune hematologic abnormalities, resulting in substantial female health issues.

62. Fowler did not pass the Step One Exam. Fowler could not participate in Saba's clinical program and therefore, did not graduate from medical school.

***DEMMONS AND FOWLER CURRENT INCOME AND EXPENSES***

63. The outstanding balance due on Debtors' eight remaining student loans total at least $367,280.65.[2]

64. The total monthly payments due by Debtors under the terms of their original student loan contracts is $1597.81[34]

65. Demmons has been unsuccessful in his attempts to "match" in order to procure a medical residency. As such, despite having graduated from medical school, Demmons cannot be a licensed physician or practice medicine in the United States.

66. Demmons is currently employed as an "ED Tech" earning $12.25 per hour.

---

[2] Key Bank loan balance $123,679.37 plus ECMC balance of $51,955.25 plus Deutsche Demmons Loan of at least $64,589.58; plus Demmons FCDB loan of at least $72,443,56 (as of December 7, 2014); plus Fowler Deutsche loan of at least $40,581.89; plus Fowler FDCB loan of at least $14,031 (as of December 7, 2014).

[3] Monthly payments comprised as follows: Key Bank $630.27 plus ECMC $263 plus Deutsche Bank $168.48 plus FCDC $185.82 plus Fowler Deutsche Bank $252.96 and FCDB $97.28.

[4]

9

67.  Fowler is employed in the field of durable medical equipment, wherein she is involved in shipping incontinence supplies.

68.  Fowler earns $10.30 per hour from her employment.

69.  Assuming a 40 hour week, Debtors gross monthly salary from employment totals $3,608.00.

70.  Per the Internal Revenue Service census bureau effective April 1, 2016, the Louisiana median monthly income for a household size of two is $4,215.

71.  In June, 2014, the Debtors' Schedule I showed total net income of $2,562.79.

72.  Through discovery issued in November 2015, Demmons admitted that his 2015 net monthly income, after deduction of taxes and an IRA contribution (of $98 per month), was $1,569.28, which is approximately $345 higher than his income included in the bankruptcy schedules.

73.  However, in discovery issued in November 2015, Fowler disclosed that her 2015 net monthly income, after deduction of taxes and an IRA contribution (of $36.67 per month) was $621.71, which is approximately $716.80 less than her income included in the bankruptcy schedules.

74.  Fowler's decrease in income is due to decreased hours at her job, over which Fowler has no control.

75.  In June, 2014, the Debtors' Schedule J showed total monthly expenses of $2,524.59.

76.  Through discovery issued in November 2015, Demmons and Fowler admitted that their total monthly expenses are $2,234.67 per month, which is approximately $289.92 less than stated in their  bankruptcy schedules.

77.      The expenses reflected by Debtors on their Schedule J are less than the amount set

10

forth by the IRS for allowable living expenses for a household size of two, as to home maintenance, food and clothing.

78.  The expenses reflected by Debtors on their Schedule J evidence the payment of no car note and they have no currently functioning vehicle.

79.  The Debtors have no health insurance and will owe a fine when Debtors file their 2015 taxes for failing to maintain health insurance.


**C.   Uncontested Facts Related to Saba Claims**

80.  Saba's curriculum generally consisted of two parts: first, a "Basic Sciences" component consisting of five semesters of classroom work, followed by, second, a "Clinical Medicine" program comprised of 72 weeks. The USMLE Step 1 examination is the first of a three-step examination required for medical licensure in the United States.

81.  Both Mr. Demmons and Ms. Fowler successfully completed their "Basic Sciences" coursework in 2006.

82.  In August, 2006, Demmons and Fowler returned to the United States.

***DEMMONS***

83.  Demmons successfully passed the USMLE Step 1 Examination on October 31, 2007.

84.  Demmons took part in clinical programs during his semesters 6-10 at Saba, beginning in December, 2007 and continuing through May, 2010, when he graduated with a Doctor of Medicine degree.

***FOWLER***

85.  Prior to her 5th semester, Fowler paid Saba's tuition and fees, as well as her living

expenses, out of pocket and had no student loan debt.

86.  Fowler originally applied for a student loan in January 2006 and was loaned
$31,130 from Student Loan Express, under a  note owned by Deutsche ("Fowler Student Loan
#1").

87. On January 19, 2006, $15,000 was disbursed to Saba.  On January 20, 2006, at
Fowler's request and direction, Saba wired $14,975 to Fowler, which she used to cover her living
expenses for Semester 5.  Wire transfers are subject to a $25 wire fee.

88. This loan balance was submitted directly by Deutsche directly to Saba, which in
turn, sent $14,975 to Fowler to cover her living expenses for Semester 5.  The remaining loan
balance of $16,130 was retained by Saba.

89.  In November, 2007, Fowler entered into a second student loan, now owned by
FDCB, in the amount of $38,460 (the "Fowler Student Loan #2").

90.  The Fowler Student Loan #2 proceeds of $38,460, were disbursed directly by the
lender to Saba.  From these proceeds, Saba withheld tuition and fees of $17,260 for Semester 7
and $9,190 for Semester 8.

91.  Saba subsequently disbursed the remaining $21,200 to Fowler to cover living
expenses associated with Semesters 7 and 8.

92.  Fowler borrowed student loans totaling  $69,590, of which $26,085 was paid to
Saba for tuition and fees covering semesters 6 (Fall of 2006), 7 (Fall of 2007), and 8 (Spring of
2008).

93. Fowler attempted and failed the USMLE Step 1 Exam on three separate occasions
between 2007 and 2009.

94.  Fowler was academically dismissed from Saba effective June 9, 2009 for failure to

NO:1451240/00041:182892v1

progress.

95 . From total tuition and fees retained by Saba of $26,085, Saba sent to Great Lakes, the originating student loan lender, a check in the amount of $25,210, dated June 9, 2009. This check constituted a refund of the majority of tuition and fees borrowed by Fowler covering semesters 6 (Fall of 2006), 7 (Fall of 2007), and 8 (Spring of 2008).

96. The notation contained on the Saba refund check listed the loan number of the FCDB Student Loan.

## III.    CONTESTED FACTS

### As To Dischargeabilitiy

1. Debtors cannot maintain a minimal standard of living if forced to repay the student loans.

2. Debtors income will not increase in the foreseeable future.

3. Demmons attempted to make only three (3) payments on the ECMC Student Loan. However, two (2) payments were returned for insufficient funds, so only one (1) payment was actually applied to the Note.

4. Whether Debtors' current condition may change in the reasonably foreseeable future.

5. What actions Debtors took that would constitute good faith effort to pay.

### As to Saba Litigation:

1. Whether Fowler was appropriately classified by Saba as a student in the clinical medicine program while simultaneously being denied access to the clinical education program.

2. Whether Saba has a written policy requiring students to pass the Step One Examination prior to their participation in the clinical medicine program.

3. Was Fowler treated differently than other students

4. Did Saba accurately calculated the amount of the Tuition Refund sent to Great

13

Lakes and whether Saba had an obligation to refund the tuition and fees to the correct loan from which the proceeds were disbursed.

5.      Whether Saba had any obligation—contractual or otherwise—to refund or disburse any student loan amounts to either Demmons or Fowler within any timeframe.

6.      Saba applied the proceeds remitted from Demmons' Student Loan at or around the time such student loan proceeds were disbursed to Saba..

7.      Saba prepaid itself tuition and fees from Demmons Student Loans, prior to the date that such tuition and fees were due.  Saba withheld student loan proceeds to pay itself 455 days in advance of Semester 6; 146 days in advance of Semester 7; 199 days in advance of Semester 8, 229 days in advance of Semester 9; and 152 days in advance of Semester 10.

8.   .Demmons derived no reciprocal benefit from Saba for his prepayment of tuition and fees.

9.   On August 7, 2006, Student Loan Express disbursed $16,130 to Saba.  Saba applied $8, 550.00 toward tuition, $250.00 toward a bachelor of science degree fee, and applied $25 to a wire fee associated with wiring the remaining $7,305 to Fowler for living expenses.

10.  In the Fall of 2006, Saba disbursed the remaining proceeds of the Deutsche Student Loan by applying $8,825 toward tuition and fees for Semester 6 and sending Fowler the remaining balance of $7,305 for living expenses

11. Saba charged Fowler for Malpractice Liability Insurance as part of her Semester 6 Clinical Medicine tuition.  Only students participating in the Clinical Medicine program are required to maintain malpractice liability insurance.

12. Whether Fowler was ineligible or prohibited to participate in Saba's clinical programs for Semesters

NO:1451240/00041:182892v1

6, 7 and 8.

13. Between Fall of 2006 and the Spring of 2009, no benefits were received by Fowler from Saba in exchange for her payment of Saba's tuition and fees for Semesters 6, 7 and 8.

14. The Great Lakes check cleared Saba's bank account in July 2009.

15. Great Lakes did not receive the Saba refund check until November 2009.

## IV.    ISSUES OF LAW

**A.    Issues of Law for Dischargeability Claims**

1.   Whether the Debtors  have demonstrated the factors required under the *Brunner* test to be eligible for an undue hardship discharge from their  student loans held by the Student Loan Lenders.

2.   Whether the three Demmons pre-October 2005 loans held by Key Bank are dischargeable as the loans are private loans that were not made, insured or guaranteed by a government unit or made under any program funded in whole or in part by a governmental unit or nonprofit organization.

3.   Whether the Key Bank Loans made prior to October 2005 should be subject to the pre-BAPCPA dischargeability provisions for private student loans.

4.   Whether the Key Bank Loans, Deutsche Bank Loans, and FCDB Loans are dischargeable because the amount of the loans exceeded Saba's applicable Cost of Attendance.

5.   Whether current law, or the pre-BAPCPA law in effect when the loans were made, would apply.

15

## B.      Issues of Law for Saba Claims

**By the Plaintiffs:**

1.   Whether Saba had a duty to appropriately and expeditiously apply Debtors student loan proceeds.

2.   Whether Debtors were damaged by Saba's failure to perform its duty to appropriately apply the student loan proceeds.

3.   Whether Saba is liable for breach of contract in its handling of the application of student loan proceeds, which were not yet contractually due to Saba.

4. Whether and to what extent Debtors have been damaged by Saba's breach of contract.


**By the Defendant Saba:**

5. Whether Plaintiffs are barred by judicial estoppel from asserting claims against Saba due to their failure to schedule any causes of action as assets in their bankruptcy case.[5]

6. Whether Plaintiffs' tort claims are barred under either Louisiana's one-year prescriptive period or the five-year prescriptive period under Dutch law when tort claims alleged by Fowler occurred prior to or concurrently with her dismissal from Saba in June 2009.[6]

7.   Whether Plaintiffs' breach of contact claims are prescribed under the five-year limitations period established under Dutch law.[7]

---

[5] *See Reed v. City of Arlington*, 650 F.3d 571, 574-77 (5th Cir. 2011); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335-36 (5th Cir. 2004); (Doc. 139 at 9 n. 1).

[6] *See* La. C.C. Art. 3492; *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1164 (11th Cir. 2009).

[7] *See* Dutch Civil Code Art. 3.307-3.309.

(continued...)

16

8. If Plaintiffs' breach of contract claims are not prescribed, whether Plaintiffs can demonstrate the elements for a breach of contract claim, which requires, at a minimum, proof of an obligation to perform, breach of the obligation, and damages. [8]

## V.     WITNESS LIST

**A.     Witnesses for April 12 Dischargeability Trial**

**On Behalf of Plaintiffs Demmons and Fowler:**

1. William Demmons

2. Karen Fowler

3. Dr. Kaye

4. Any witness listed by any other party

5. Any rebuttal witness

**On Behalf of Defendants**

1. William A. Demmons, will call

2. Karen Fowler, will call

3. Any of the parties' witnesses for rebuttal or impeachment or direct testimony, may call



(continued...)

___

[8] *E.g., F.H. Paschen, S.N. Nielsen & Associates, LLC v. Southeastern Commercial Masonry, Inc.*, Case No. 12-2799 2015 WL 7015389 *2 (E.D.La. Nov. 10, 2015).

NO:1451240/00041:182892v1

B.       **Witnesses for April 13 Saba Trial**

On Behalf of Plaintiffs Demmons and Fowler:

1.  William A. Demmons, will call

2.  Karen Fowler, will call

3.  Dr. Jayanthini Nadarajah, previous Saba Student, may call

4.  Any witness listed by any other party

5.  Any rebuttal witness

**On Behalf of Saba:**

1.       William A. Demmons, Will Call

2.       Karen S. Fowler, Will Call

3.       Terry J. Moya, Chief Financial Officer, Saba, Will Call

4.       Any witness listed by any other party.

5.       Any rebuttal witness.

## VI.   EXHIBIT LIST

\* The exhibit list will be finalized, consolidated, and provided to the court on the morning of trial.

A.       **Exhibit List for April 12 Dischargeability Trial**

**On Behalf of Plaintiff Debtors:**

1. Bankruptcy Schedules

**2.** Paystubs

3. Applicable expenses

4. Chart of Allowable expenses by US Trustee, Chapter 13 Trustee and Bankruptcy Code

5. Means Test for Family of Two

6.  Cost of Attendance at Saba

7.  Comparison of Cost of Attendance and Student Loan Proceeds Distributed.

8.  Demmons Medical Records produced in Discovery

9.  Medical Records of Demmons

Plaintiffs reserve the right to introduce rebuttal evidence during the trial to impeach and/or rebut

any testimony given at trial.

**On Behalf of ECMC:**

1.  The Note

2.  The payment history on the Note by Demmons

3.  All correspondence regarding any deferment of the payments due under the Note

4.  The April 1, 2016, letter sent by counsel for ECMC to counsel for Demmons regarding
    options available for Demmons to repay his student loans

5.  Demmons' bankruptcy petition, including Schedule I and J

6.  Demmons' 2013 and 2014 tax returns and W-2s from 2015.

7.  Demmons' responses to discovery propounded by ECMC

8.  Any documents filed within the Adversary Proceeding or the underlying bankruptcy case.

ECMC reserves the right to introduce rebuttal evidence during the trial to impeach and/or rebut

any testimony given at trial.

**On Behalf of Deutsche Bank National Trust Co.**

1.  The Demmons Master Note

2.  The Fowler Master Note

3.  The payment history on the Demmons Master Note by Demmons

NO:1451240/00041:182892v1

4.  The payment history on the Fowler Master Note by Fowler

5.  All correspondence regarding any deferment of the payments due under the Notes

6.  Demmons/Fowler bankruptcy petition, including Schedule I and J

7.  Demmons/Fowler 2013 and 2014 tax returns

8.  Demmons/Fowler's responses to discovery propounded by Deutsche Bank National Trust Co.

9.  Any documents filed in the within case or in the underlying bankruptcy case.


Deutsche Bank National Trust Co. reserves the right to introduce rebuttal evidence during the trial to impeach and/or rebut any testimony given at trial.  Deutsche may use any document listed herein, or any document received from or provided to Plaintiffs during the litigation, for this purpose.

**<u>On Behalf of Key Bank:</u>**

1.  The Master Note

2.  The payment history on the Master Note by Demmons

3.  All correspondence regarding any deferment of the payments due under the Note

4.  Demmons' bankruptcy petition, including Schedule I and J

5.  Demmons' 2013 and 2014 tax returns

6.  Demmons' responses to discovery propounded by KeyBank

7.  Demmons' bank statements

8.  Demmons' credit account statements

9.  Any documents filed in the within case or in the underlying bankruptcy case.

20

KeyBank reserves the right to introduce rebuttal evidence during the trial to impeach and/or rebut any testimony given at trial.   Kay Bank may use any document listed herein, or any document received from or provided to Plaintiffs during the litigation, for this purpose.

### B.        Exhibit List for April 13 Saba Trial

**On Behalf of Plaintiffs:**

1. Saba Semester 6 Clinical Medicine Tuition Statement dated 7/15/2006.

2. Bursar Rosa email to Debtor dated January, 2015.

3.  Janet Baczewski email to Debtor dated March 7, 2006 re part time status

4. Janet Baczewski email to Debtor regarding tuition for Semesters 7 and 8.

5.  Saba Admission letter to Fowler dated July 25, 2003.

5. Saba Tuition Payment Policies (pages 34-35)

6.  Saba refund letter to Great Lakes dated July 17, 2009

7.  Saba Statement to Fowler dated 11/30/2014

8.  Leave of absence forms (319-325)

9.  Student Loan Express (326, 327, 335, 344, 348)

10. ScholarNet (328, 329,330,331, 340, 341, 342)

11. Saba internal records (332, 333, 334, 336, 345, 356)

12. Saba paid invoices (357, 358, 359)

13. Letter to Great Lakes and Check, (360)

14. Letter of dismissal (382)

15. Letter from Saba "to whom it may concern" dated 1/31/2008

16. Fredrick Letters (390-391; 402)

17. Registration Form (394)

21

18. Clinical Interview Rating Form (426)

19. Saba Medicine Clinical Student Contract (427)

20. Application for Medical Student Liability Insurance (429)

21. Clinical Medicine Questionnaire by Fowler (430)


Debtors reserve the right to introduce rebuttal exhibits at the time of trial to impeach or rebut trial testimony. Debtors also reserve the right to introduce any exhibits designated by any other party.


**On Behalf of Saba:**

1.    Plaintiffs' Schedules and Statement of Financial Affairs (Doc. 1)

2.    June 9, 2009 Refund Check in the amount of $25,210.00 issued by Saba to Great Lakes

3.    Tuition Refund Excerpt from 2004-2006 Saba Catalog

4.    2004 – 2006 Saba Catalog

5.    2007-2009 Saba Catalog

6.    William Demmons Saba Account Summary

7.    William Demmons Loan Disbursement Summary

8.    Karen Fowler Saba Account Summary

9.    Karen Fowler Loan Disbursement Summary

10.   Karen Fowler Transcript

11.   William Demmons Transcript

12.   Karen Fowler Health Xpress Loan Application

13.   Karen Fowler ScholarNet Loan Information Summaries

22

14.     Demmons-Fowler Guaranteed Loans Response Report

15.     Demmons-Fowler Loan Disbursement Reports

16.     Saba Wire Disbursement Records

17.     Karen Fowler Health Xpress Pre-Screen Results

18.     Karen Fowler ScholarNet Screens

19.     January 20, 2006 Tuition Statement

20.     February 16, 2006 Tuition Statement

21.     July 15, 2006 Tuition Invoice

22.     August 9, 2006 Tuition Statement

23.     Student Loan Xpress Disbursement Letter dated January 20, 2006

24.     Student Loan Xpress Disbursement Letter dated August 9, 2006

25.     July 15, 2007 Tuition Invoice

26.     November 15, 2007 Tuition Invoice

27.     Student Loan Xpress Disbursement Letter dated December 5, 2007

28.     Saba Reconciliation Detail December 31, 2007

29.     October 31, 2007 Fowler USMLE Results

30.     January 31, 2008 Letter from Saba to Fowler regarding USMLE

31.     March 31, 2008 Fowler USMLE Results

32.     Karen Fowler April 24, 2008 Letter and Email to Promotions Committee

33.     Karen Fowler Falcon Registration

34.     May 19, 2008 Letter Regarding USMLE Attempts

35.     September 29, 2008 Dismissal Letter

36.     Karen Fowler October 27, 2008 Letter and Email to Dr. Eliastam Appealing

23

Dismissal

37.     October 30, 2008 Letter Allowing Additional USMLE Attempt

38.     June 9, 2009 Dismissal Letter

39.     Saba Bank Statement Period Ending July 31, 2009

40.     Karen Fowler Leave of Absence Forms

41.     William Demmons Leave of Absence Forms

42.     William Demmons Tuition Statements and Invoices

43.     William Demmons Loan Disbursement Records

44.     William Demmons MedAchiever Loan Application

45.     William Demmons Chabert Medical Center Record

Saba reserves the right to introduce rebuttal exhibits at the time of trial to impeach or rebut trial testimony.  Saba also reserves the right to introduce any exhibits designated by any other party.

DATED: April 6, 2016

24

Respectfully Submitted,

By:*/s/ Robin R. De Leo*
Robin R De Leo (La. #20347)
The De Leo Law Firm
800 Ramon St.
Mandeville, Louisiana 70448
Telephone: 985-727-1664
Fax: 985-727-4388
*Attorneys for Debtors/Plaintiffs*


By: */s/ Bradley Knapp*
C. Davin Boldissar (La. #29094)
Bradley C. Knapp (La. # 35867)
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: 504-558-5211
Fax: (504) 681-5211
*Attorneys for R3 Education Inc., dba Saba*
*University School of Medicine*

By: */s/ Heather LaSalle Alexis*
Heather LaSalle Alexis
McGlinchey Stafford
601 Poydras St STE 1200
New Orleans, LA 70130
Telephone: 504-596-0395
Fax: 504-324-0749
*Attorney for ECMC*


 By: */s/ Joseph McCandlish*
Joseph M McCandlish
Weltman,Weinberg & Reis Co., L.P.A.
Regional Counsel
3705 Marlane Drive
Grove City, OH 43123
Telephone: 614-801-2619
Fax: 614-801-2601
*Attorney for Deutsche Bank and Key Bank*


By: */s/ Earl f. Sundmaker*
Earl F. Sundmaker

25

The Sundmaker Firm
Local Counsel
1027 Ninth St
New Orleans, LA 70115
Telephone: 504-568-0515
Fax: 504-568-0519
*Attorney for Deutsche Bank and Key Bank*

NO:1451240/00041:182892v1